UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

_____

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | )  Chapter 11 |
| VANTAGE TRAVEL SERVICE, INC. | ) |
|  | )  Case No. 23-11060-JEB |
| Debtor. | ) |

_____

**DEBTOR'S MOTION FOR ORDER (A) APPOINTING STRETTO, INC. AS
CLAIMS AND NOTICING AGENT AND (B) AUTHORIZING RETENTION
AND EMPLOYMENT OF STRETTO, INC. AS ADMINISTRATIVE ADVISOR**
**[Expedited Determination Requested]**

Vantage Travel Service, Inc. (the "Debtor") hereby moves this Court pursuant to 28
U.S.C. § 156(c), Sections 327(a) and 328(a) of the Bankruptcy Code, and Fed. R. Bankr. P.
2014(a) and 2016(b), for entry of an order:  (A) appointing Stretto, Inc. ("Stretto" or the "Firm"),
a bankruptcy services firm with substantial expertise in the administration of Chapter 11 and
Chapter 7 bankruptcy cases, to serve as the claims and noticing agent in this case in support of
and in coordination with the Office of the Clerk of this Court; and (B) authorizing the Debtor to
retain and employ the Firm as its administrative advisor during this case.  The Debtor requests
that such appointment and employment be governed by the terms and conditions set forth in the
engagement letter agreement between the Debtor and the Firm dated May 18, 2023 attached as
Exhibit A (the "Engagement Letter") and this Court's order approving this Motion.  The facts
and circumstances supporting this Motion are as set forth herein and in the Declaration of Sheryl
Betance (the "Betance Declaration") attached as Exhibit B.  A proposed form of order granting
the relief sought by this Motion is attached as Exhibit C (the "Proposed Order").  In support of
this Motion, the Debtor states as follows:

**Background**

1.      On June 29, 2023 (the "Petition Date"), the Debtor filed a voluntary petition with this Court commencing this Chapter 11 case.  Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to manage its business and financial affairs as a debtor-in-possession.  No creditors' committee has yet been appointed.

2.      The Debtor was founded in 1983, and has since that time grown to become one of the country's most recognized travel agencies providing deluxe international tours.  Since its inception, the Debtor has provided travel experiences to more than 500,000 travelers, offering at its pre-pandemic height 65 tours and more than 500 departures annually.  Its travel offerings include trips on river and ocean-going vessels owned by affiliated, non-debtor entities, as well as tours booked with third-party operators.

3.      On the Petition Date, the Debtor filed its motion seeking authority to sell substantially all of its assets on a going concern basis (the "Sale Motion").  The details of the Debtor's history, operations, financial difficulties, and events leading to this Chapter 11 case and the proposed sale of the Debtor's business are set forth in the Sale Motion and are incorporated herein by reference.

**Relief Requested**

4.      The Debtor has over 10,000 creditors.  To avoid unduly burdening the Court and the Clerk with noticing and claims administration matters involving such a large creditor body, the Debtor seeks appointment of the Firm pursuant to 28 U.S.C. § 156(c) as claims and noticing agent with primary responsibility for the administration of noticing and claims administration matters in this case.  In addition, the Debtor seeks to retain and employ the Firm pursuant to Section 327(a) of the Bankruptcy Code as its administrative advisor on an "as needed" basis to

assist and support the Debtor in administering this case and fulfilling its duties as debtor-in-possession, including with respect to matters such as the preparation and filing of the Debtor's schedules.  By this Motion, the Debtor respectfully requests that this Court enter an order, substantially in the form of the attached Proposed Order, authorizing such appointment and employment on the terms and conditions set forth in the Engagement Letter.

### Stretto's Qualifications

5.      The Firm is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of sizeable chapter 11 cases involving thousands of creditors.  Stretto's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases throughout the nation. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's active and former cases include:  *In re Claim Jumper Acquisition Co.*, Case No. 22-21941 (GLT) (Bankr. W.D. Pa. Oct. 5, 2022); *In re Phoenix Services Topco, LLC*, Case No. 22-10906 (MFW) (Bankr. D. Del. Sept. 28, 2022); *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. July 19, 2022); *In re HONX, Inc.*, Case No. 22-90035 (MI) (Bankr. S.D. Tex. June 24, 2022); *In re Black News Channel, LLC*, Case No. 22-40087 (KKS) (Bankr. N.D. Fla. Apr. 11, 2022); *In re Rockall Energy Holdings, LLC*, Case No. 22-90000 (MXM) (Bankr. N.D. Tex. Mar. 14, 2022); *In re Arian Mowlavi, M.D.*, Case No. 22-10296 (ES) (Bankr. C.D. Cal. Mar. 1, 2022); *In re Watsonville Hospital Corp.*, Case No. 21-51477 (MEH) (Bankr. N.D.

Cal. Dec. 8, 2021); *In re Kansas City United Methodist Retirement Home, Inc.*, Case No. 21-41049 (CAN) (Bankr. W.D. Mo. Dec. 3, 2021); and *In re Liberty Power Holdings, LLC*, Case No. 21-13797s (SMG) (Bankr. S.D. Fla. May 25, 2021).

**<u>Claims and Noticing Agent Services</u>**

6.      The Firm will perform the following tasks in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

a.      prepare and serve required notices and documents in this chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of this chapter 11 case and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of this chapter 11 case;

b.      maintain an official copy of the Debtor'' schedules of assets and liabilities and statements of financial affairs (collectively, the "<u>Schedules</u>"), listing the Debtor'' known creditors and the amounts owed thereto;

c.      maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

d.      furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.      maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.      for all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.      process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h.      provide an electronic interface for filing proofs of claim;

i.      maintain the official claims register for the Debtor (collectively, the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); and (vi) any disposition of the claim;

j.      provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k.      implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

l.      record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m.      relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Stretto, not less than weekly;

n.      upon completion of the docketing process for all claims received to date, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

o.      monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any

service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

p.    identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q.    assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

r.    if the Debtor's chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Stretto of entry of the order converting the case;

s.    thirty days prior to the close of the Debtor's chapter 11 case, to the extent practicable, request that the Debtor submit to the Court a proposed order dismissing Stretto as claims and noticing agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of the chapter 11 case;

t.    within seven days of notice to Stretto of entry of an order closing the chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the chapter 11 case; and

u.    at the close of these chapter 11 case, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064 or (ii) any other location requested by the Clerk's Office (the services set forth in preceding subsections (a) – (u) of this paragraph 6 are referred to herein as the "Claims Agent Services").

7.    This Court's appointment of Stretto to serve as the claims and noticing agent in this Chapter 11 case will facilitate the efficient and prompt distribution of notices and processing of claims, and will alleviate the burden that would otherwise be placed on the Clerk to deal with the transmittal of notices to and the processing of claims filed by the Debtor's very large creditor body.

**Additional Services**

8.      In addition to having the Firm appointed as claims and noticing agent to

perform the Claims Agent Services, the Debtor seeks to utilize the Firm on an "as needed"

basis to advise, assist and support the Debtor in fulfilling its disclosure and administrative

duties as debtor-in-possession, notably with respect to preparation and filing of the Debtor's

schedules that will incorporate information concerning the more than [6,000] creditors of the

Debtor.  Pursuant to the Engagement Letter,  the Debtor seeks to retain the Firm to provide,

among other things, the following bankruptcy administrative services, if and to the extent

requested by the Debtor:

a.      Assist with, among other things, solicitation, balloting, and tabulation of votes; prepare any related reports, as required in support of confirmation of a chapter 11 plan;

b.      Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

c.      Assist with the preparation of the Debtor's schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

d.      Provide a confidential data room;

e.      Manage and coordinate any distributions pursuant to a chapter 11 plan if designated as distribution agent under such plan; and

f.      Provide such other solicitation, balloting and other administrative services described in the Engagement Letter, as may be requested from time to time by the Debtor, the Court or the Office of the Clerk of the Court (the services set forth in preceding subsections (a) – (f) of this paragraph 8 are referred to herein as the "Administrative Advisor Services").

## **Basis for Relief**

9.      Section 156(c) of title 28 of the United States Code, which governs the staffing

and expenses of bankruptcy courts, authorizes the Court to use "facilities" or "services" other

than the Clerk's Office for administration of bankruptcy cases. It states:

> Any court may utilize facilities or services, either on or off
> the court's premises, which pertain to the provision of notices,
> dockets, calendars, and other administrative information to
> parties in cases filed under the provisions of title 11, United
> States Code, where the costs of such facilities or services are
> paid for out of the assets of the estate and are not charged to
> the United States. The utilization of such facilities or services
> shall be subject to such conditions and limitations as the
> pertinent circuit council may prescribe.

28 U.S.C. § 156(c).  The Debtor submits that, under the circumstances presented by this case

(including particularly the Debtor's sizeable creditor body), appointment of the Firm as claims

and noticing agent will benefit the Court, the Clerk, and the Debtor's estate and creditors.

10.      Section 327(a) of the Bankruptcy Code authorizes the employment of a

professional person by the debtor-in-possession, and Section 328(a) of the Bankruptcy Code

provides for such employment to be on any reasonable terms and conditions of employment.

Subject to this Court's approval and in accordance with Sections 328, 330 and 331 of the

Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the rules and other

procedures that may be fixed by this Court.  The Debtor submits that its retention of the Firm to

provide services beyond the scope of claims and noting agent services, on an "as needed" basis,

is appropriate and will support the Debtor's efforts to administer its case and perform its

statutory duties in an efficient manner.

**Professional Compensation**

11.    The Debtor requests that the undisputed fees and expenses incurred by the Firm in the performance of Claims Agent Services—including notably and without limitation out-of-pocket expenses of postage for mailings—be treated as administrative expenses of the Debtor's Chapter 11 estate pursuant to 28 U.S.C. § 156(c) and Section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. The Debtor has budgeted for such expenses, as set forth in its operating budget accompanying its financing motion, and payment of such expenses in the ordinary course (and in some instances, in advance, as permitted and required under the Engagement Letter with regard to sizeable postage charges) is appropriate and reasonable under the circumstances. Stretto agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor and its counsel, the United States Trustee, and counsel for any official committee appointed in the case. If any dispute arises relating to the Firm's compensation or services, the Firm and the Debtor will endeavor to address the dispute promptly and involve the Court as needed.

12.    For Administrative Advisor Services, the Firm intends to apply for compensation allowance in compliance with applicable provisions of the Bankruptcy Code and related procedural rules and orders of this Court.

13.    With respect to the all of the Firms' services—both Claims Agent Services and Administrative Advisor Services—the Debtor has agreed to pay the Firm based upon the Firm's "Preferred Rate Structure" appended to the Engagement Letter (the "Rate Schedule"). The Rate Schedule sets forth hourly rates for the Firms' professionals in a range of $70 to $250 per hour, and provides for the Firm's waiver of certain executive management fees. The Debtor believes

that the Firm's rates are reasonable and quite competitive in the bankruptcy administration industry.  The Rate Schedule also sets forth the Firm's established charges for certain noticing and publication expenses and other ancillary services.

14.     The Debtor has agreed to reimburse the Firm for the actual and necessary expenses it incurs, including but not limited to printing, postage, photocopies, courier service, computer assisted research, travel, and any other incidental costs advanced by the Firm specifically for these matters, at the rates commonly charged for such costs to other Firm clients, including as set forth in the Rate Schedule.

15.     Prior to the Petition Date, the Debtor provided Stretto an advance in the amount of $10,000.  Stretto seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Letter during this chapter 11 case as security for the payment of fees and expenses incurred under the Engagement Letter.

16.     The Debtor and the Firm established the compensation provided for by the Engagement Letter with the express understanding that the hours worked, results achieved and ultimate benefit of work performed to the Debtor's estate may be variable and have taken this into account in setting the compensation payable thereunder.  Given the nature of the Firm's services, and the arrangements made to compensate the Firm as set forth in the Engagement Letter, the Debtor requests that the Engagement Letter arrangements for compensating the Firm, as summarized and modified above, be approved under Section 328(a) of the Bankruptcy Code, such that compensation different from the terms and conditions of the Engagement Letter may be allowed if the Engagement Letter compensation arrangements prove to have been improvident in light of developments not capable of being anticipated at the time the arrangements were made.

17.     Pursuant to the Engagement Letter, the Debtor has agreed (a) to indemnify the

Firm and its affiliates, and the directors, officers, agents, advisors and employees of the Firm or

its affiliates (each an "Indemnified Person") against any liability arising from the Firm's

engagement by the Debtor, including costs of defending against any such liability, and (b) that

no Indemnified Person shall have any liability to the Debtor, creditors or security holders arising

out of this engagement.  However, indemnification and exoneration do not apply to the extent

that any liability is determined to have resulted from the Firm's willful misconduct or gross

negligence.

18.     The Debtor submits that the retention of the Firm under the terms described

herein is appropriate under 11 U.S.C. § 156(c) and Sections 327 and 328 of the Bankruptcy

Code.

19.     Other than as set forth herein, there is no proposed arrangement to compensate the

Firm.  The Firm has not shared, nor agreed to share (a) any compensation it has received or may

receive with any other party or person, other than with partners and employees of the Firm; or (b)

any compensation another person or party has received or may receive.

**The Firm Does Not Have Any Adverse Interest**

20.     As set forth in the Betance Declaration, the Firm has completed a conflicts check

that compares a list of the Firm's current and former clients against the names of: (a) the Debtor;

(b) the Debtor's known trade creditors; and (c) the other significant parties in interest in this

case.

21.     To the best of the Debtor's knowledge, based upon the Betance Declaration and

except as set forth herein and therein, the Firm does not hold or represent any interest adverse to

the Debtor or its Chapter 11 estate, creditors, or any other party with an actual or potential

conflict in this Chapter 11 case.

22.     Except as set forth herein and in the Betance Declaration, to the best of the

Debtor's knowledge, neither the Firm nor its partners or associates have any connections with

the Debtor, its creditors, any other parties-in-interest, their current respective attorneys and

accountants, the United States Trustee for this district or any person employed in the Office of

the United States Trustee for this district, except that: (a) the Firm may serve as a professional

person in other matters, wholly unrelated to the Debtor or its case, in which attorneys,

accountants and other professional persons retained by the Debtor, creditors or other parties in

interest have also been engaged, and (b) certain creditors of the Debtor may also have been

creditors of other companies represented by the Firm in matters wholly unrelated to the Debtor

or this case.

23.     Based on the foregoing, the Debtor is informed and believes that the Firm and

each of its members is a "disinterested person" as defined within Section 101(14) of the

Bankruptcy Code.

**Notice**

24.     The Debtor is providing notice of this Motion to: (a) the Office of the United

States Trustee; (b) the Debtor's 20 largest unsecured creditors as reflected in the list filed by the

Debtor pursuant to Fed. R. Bankr. P. 1007(d); (c) all known secured creditors; and (d) all entities

that have requested notice in this case.  The Debtor submits that, given the nature of the relief

requested herein, no other or further notice is necessary.

## **Conclusion**

WHEREFORE, the Debtor respectfully requests that this Court (i) enter an order, in substantially the form attached, granting this Motion effective as of the Petition Date, and (ii) grant such other and further relief as this Court may deem just and proper.

Dated:  June 29, 2023                    VANTAGE TRAVEL SERVICE, INC.

By its attorneys,

*/s/ A. Davis Whitesell*
Michael J. Goldberg (BBO #551869)
A. Davis Whitesell (BBO #551462)
Casner & Edwards, LLP
303 Congress Street
Boston, MA  02210
Tel: 617-426-5900
Email: goldberg@casneredwards.com
        whitesell@casneredwards.com

**<u>Exhibit A</u>**

[Engagement Letter Agreement with Rate Schedule]



## Services Agreement

This Services Agreement (this **"Agreement"**) is entered into as of May 18, 2023 between Stretto, Inc. (**"Stretto"**) and Vantage Travel Service, Inc. (together with its affiliates and subsidiaries, the **"Company"**).[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Stretto agrees to provide the Company with consulting services regarding (i) legal noticing, maintenance of claims registers, creditor mailing matrices, an electronic platform for filing proofs of claim, plan solicitation, balloting, tabulation of votes, disbursements, and administrative support in preparation of schedules of assets and liabilities and statements of financial affairs (**"Claims Administration, Noticing, and Solicitation Services"**); and (ii) crisis communications, claims analysis and reconciliation, preference analysis and recovery, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the **"Services"**).

   (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals (collectively, the **"Company Parties"**) with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

   (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company. Stretto's charges for Services through the effective date of a chapter 11 plan shall be at the rates attached hereto (the **"Preferred Rate Structure"**). The Company agrees that the Preferred Rate Structure shall not be applicable to Services provided to the entity or entities (including the Company) responsible for implementing a confirmed and effective chapter 11 plan and that such Services will be provided at Stretto's then prevailing rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

   (b) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid

---

[1]     The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for the Company's fees and expenses.

1



as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(c) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Stretto an advance of $10,000.00. Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all prepetition fees and expenses.  Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount.  Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(h) Stretto reserves the right to make reasonable increases to the Preferred Rate Structure on a periodic basis. If any such increase represents an increase greater than 10% from the previously effective level, Stretto shall provide 30 days' notice to the Company of such increase.

(i) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Company using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Stretto
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

3. **Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file any necessary application with the Bankruptcy Court to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If the Company seeks authorization in a chapter 11 case to obtain postpetition financing, including debtor-in-possession loans or use of cash collateral, the Company shall include Stretto's fees and expenses incurred hereunder in any professional compensation carve-out.

(c) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.



4. **Confidentiality**

   (a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

   (b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

5. **Property Rights**

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

6. **Bank Accounts**

At the request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

7. **Term and Termination**

   (a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Stretto that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

   (b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

   (c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

3



(d) If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Preferred Rate Structure.

## 8. No Representations or Warranties

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

## 9. Indemnification

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss. In no event shall Stretto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. Company Data

(a) The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.



(b) The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(d) Stretto and the Company agree that this Agreement is subject to the terms set forth in the GDPR Addendum attached hereto as Exhibit A, which are incorporated herein by reference.

(e) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. California Consumer Privacy Act.

(a) Definitions. In this Section,
   (i) "**CCPA**" means the California Consumer Privacy Act of 2018, including amendments and final regulations;
   (ii) "**Personal Information**" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and
   (iii) "**Commercial Purposes**," "**Sell**," "**Business**," and "**Service Provider**" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent the Company is considered a Business under California law, and subject to the terms of this Section 12, Stretto will act solely as Company's Service Provider with respect to Personal Information.

(c) Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

## 13. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

## 14. Force Majeure

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial

5



or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

### 15. Choice of Law

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

### 16. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act. Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

### 17. Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

### 18. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

### 19. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:



If to Stretto:          Stretto
                        410 Exchange, Ste. 100
                        Irvine, CA 92602
                        Attn: Sheryl Betance
                        Tel: 714.716.1872
                        Email: sheryl.betance@stretto.com

If to the Company:      Vantage Travel Service, Inc.
                        Attn:  Greg DelGreco, COO
                        90 Canal Street
                        Boston, MA 02114
                        Email:  GDelGreco@vantagetravel.com

With a copy to:         Casner & Edwards, LLP
                        Attn:  Michael J. Goldberg & A. Davis Whitesell
                        303 Congress Street
                        Boston, MA 02110
                        Email:  goldberg@casneredwards.com; whitesell@casneredwards.com

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first
above written.

Stretto

By:     Sheryl Betance

Title:   Senior Managing Director

Vantage Travel Service, Inc.

By:

Title:   COO/CFO

7



**Exhibit A**

**STRETTO**

### GDPR Addendum

This GDPR Addendum is a part of the Services Agreement (the "**Agreement**") by and between Stretto (the "**Processor**")[2] and the Company (together, the "**Parties**").

### RECITALS

WHEREAS,

(A)    The Processor and the Company have agreed to the following terms regarding the Processing of Company Personal Data.

(B)    The Company acts as a Controller of the Company Personal Data.

(C)    The Company wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D)    The Company instructs the Processor to process Company Personal Data.

(E)    The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "**GDPR**").

**NOW THEREFORE**, the Company and the Processor agree as follows:

1.    **Definitions.** The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

(a)    "**Addendum**" shall mean this GDPR Addendum;

(b)    "**Company Personal Data**" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Company pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Company's employees, clients, customers, creditors, equity interest holders, or counter-parties;

(c)    "**Data Protection Laws**" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

(d)    "**Services**" means the services the Processor provides to the Company pursuant to the Agreement;

(e)    "**Subprocessor**" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Company in connection with the Agreement;

---

[2] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.



(f) **"Technical and organizational security measures"** means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g) The terms **"Commission"**, **"Controller"**, **"Data Subject"**, **"Member State"**, **"Personal Data"**, **"Personal Data Breach"**, **"Processor"**, **"Processing"**, **"Special Categories of Personal Data"**, and **"Supervisory Authority"** shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2. **Obligations of the Company.**  The Company agrees and warrants:

(a) that the Processing, including the transfer itself, of the Company Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b) that it has instructed and throughout the duration of the Services will instruct the Processor to process the Company Personal Data transferred only on the Company's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c) that the Processor will provide sufficient guarantees in respect of the technical and organizational security measures;

(d) that after assessment of the requirements of the applicable data protection law, the technical and organizational security measures are appropriate to protect the Company Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e) that it will ensure compliance with the technical and organizational security measures; and

(f) that the Company Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3. **Obligations of the Processor.**  The Processor agrees and warrants:

(a) to comply with the Data Protection Laws;

(b) to process the Company Personal Data only on behalf of the Company and in compliance with its instructions and this Addendum; if it cannot provide such compliance for whatever reasons, it agrees to inform promptly the Company of its inability to comply, in which case the Company is entitled to suspend the processing of data and/or terminate the Agreement;

2



(c)    that it has no reason to believe that the legislation applicable to it prevents it from fulfilling the instructions received from the Company and its obligations under the Agreement and that in the event of a change in this legislation which is likely to have a substantial adverse effect on the warranties and obligations provided by the Clauses, it will promptly notify the change to the Company as soon as it is aware, in which case the Company is entitled to suspend the transfer of data and/or terminate the Agreement;

(d)    that it has implemented reasonable and appropriate technical and organizational security measures before processing the Company Personal Data;

(e)    that it will promptly notify the Company about:

     i.    any legally binding request for disclosure of the Company Personal Data by a law enforcement authority unless otherwise prohibited, such as a prohibition under criminal law to preserve the confidentiality of a law enforcement investigation;

    ii.    any accidental or unauthorized access; and

    iii.    any request received directly from any data subject without responding to that request, unless it has been otherwise authorized to do so by the Company or as required by any applicable law;

(f)    to deal promptly and properly with all inquiries from the Company relating to its Processing of the Company Personal Data and to abide by the advice of the supervisory authority with regard to the processing of the Company Personal Data;

(g)    to take reasonable steps to ensure the reliability of any employee, agent, or contractor of any Subprocessor who may have access to the Company Personal Data, ensuring in each case that access is strictly limited to those individuals who need to know or access the relevant Company Personal Data, as strictly necessary to perform the Services under the Agreement, and to comply with Data Protection Laws in the context of that individual's duties to the Subprocessor, ensuring that all such individuals are subject to confidentiality undertakings or professional or statutory obligations of confidentiality; and

(h)    that it shall not use (or disclose any Company Personal Data to) any Subprocessor unless required or authorized by the Company with prior written consent.

**4.    Obligations after Termination of Personal Data Processing Services.**

(a)    The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Company, return all Company Personal Data and the copies thereof to the Company or shall destroy all the Company Personal Data and certify to the Company that it has done so, unless legislation imposed upon the Processor prevents it from returning or destroying all or part of the Company Personal Data. In that case, the Processor warrants that it will guarantee the confidentiality of the Company Personal Data and will not further process the Company Personal Data.

3

# Preferred Rate Structure

**Consulting Services and Rates**

*Analyst*                                                                                     *Waived*
The Analyst processes incoming mail, creditor correspondence and returned mail, and supports the case team with administrative tasks as required.

*Consultant (Associate/Senior Associate)*                          *$70 - $200*
The Associate manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims and ballots, overseeing contract review, overseeing all physical and electronic noticing, and generating custom claim and ballot reports.

The Senior Associate leads complex data aggregation projects for compilation of Schedules & SOFA, the creditor matrix and special notice lists. In addition, the Senior Associate oversees quality control and on mailings and reports. Stretto's Senior Associates average over seven years of experience.

*Director/ Managing Director*                                            *$210 - $250*
The Director is the primary contact for the company, counsel and other professionals and oversees and supports all aspects of the administration for the entirety of an engagement.

The Managing Director provides industry and/or project specific expertise to support complex matters. Professionals, including Stretto's executive management team will serve in this role when appropriate.

Stretto's Directors and Managing Directors have over fifteen years of experience and are typically former restructuring professionals.

*Executive Management*                                                      *Waived*
Our Executive Management team oversees Stretto's Corporate Restructuring group and will provide consulting support to this matter at no charge.

**Solicitation, Balloting and Tabulation Rates**

*Solicitation Associate*                                                         *$230*
The Solicitation Associate reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. The Solicitation Associate also prepares customized reports relating to voting and other corporate events, including exchange offers and rights subscriptions. The Solicitation Associate also interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and related communications.

*Director of Securities & Solicitations*                             *$250*
The Director of Securities leads public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of related processes.

**Printing & Noticing Services**

| | |
|---|---|
| Printing | $0.10 (per image) |
| Postage/Overnight Delivery | Preferred Rates |
| ECF Email Noticing | Waived |
| Fax Noticing | $0.10 (per page) |
| Envelopes | Varies by Size |
| Coordinate and Publish Legal Notices | Preferred Pricing Available on Request |
| Public Securities Events | Varies by Event |

**Electronic Services**

| | |
|---|---|
| Case Homepage Set-Up and Hosting | Waived |
| Robotic Process Automation[1] | Starting at $0.48 (per process) |
| Encrypted HTTPS Bandwidth (volume discount applies) | Starting at $0.125 (per MB) |
| Online Monthly Operating Report Platform Subscription | Waived |

**Claims Administration & Management Expenses**

| | |
|---|---|
| License Fee and System Maintenance | $0.10 (per creditor per month) |
| Database and System Access (Unlimited Users) | Waived |
| Online Claims Filing Portal | Waived |
| Online Ballots Filing Portal | Waived |
| Preference Analysis (Initial Preference Review) | Standard Hourly Rates |

**Document Management Services**

| | |
|---|---|
| Electronic Imaging (Per Imaged Page) | $0.10 |
| FedRAMP Compliant File Retention (volume discount applies) | Starting at $0.125 (per MB) |
| Virtual Data Room | Available on Request |

**Call Center Support Services**

| | |
|---|---|
| Case-Specific Toll-Free Number and Voice-Mail Box | Waived |
| Interactive Voice Response (Per Minute) | Waived |
| Monthly Maintenance Charge | Waived |
| Management of Call Center (Per Hour) | Standard Hourly Rates |

**Disbursement Services**

| | |
|---|---|
| Check Issuance | Available on Request |
| Account Opening Fee | Available on Request |
| W-9 Mailing and Maintenance of TIN Database | Standard Hourly Rates |
| Disbursements - Record to Transfer Agent | Quoted at Time of Request |

---

[1] Includes ECF docket automation, subscription-based docket notifications, USPS bulk mail operations, address validation, e-filing transactions, cloud computing charges, and related activities

2

**<u>Exhibit B</u>**

[Betance Declaration]

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | | |
|---|---|---|
| _____ | ) | |
| In re: | ) | |
| | ) | Chapter 11 |
| VANTAGE TRAVEL SERVICE, INC. | ) | |
| | ) | Case No. 23-11060-JEB |
| Debtor. | ) | |
| _____ | ) | |

**DECLARATION OF SHERYL BETANCE IN SUPPORT OF
THE DEBTOR'S MOTION FOR ORDER (A) APPOINTING STRETTO, INC. AS
CLAIMS AND NOTICING AGENT AND (B) AUTHORIZING RETENTION
AND EMPLOYMENT OF STRETTO, INC. AS ADMINISTRATIVE ADVISOR**

I, Sheryl Betance, under penalty of perjury, declare as follows:

1.      I am a Senior Managing Director of Corporate Restructuring at Stretto, Inc. ("Stretto"), a chapter 11 administrative services firm with offices at 410 Exchange, Ste. 100, Irvine, California 92602.  Except as otherwise noted in this declaration (this "Declaration"), I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      I submit this Declaration in support of the above-captioned Debtor's *Motion for Order (A) Appointing Stretto, Inc. as Claims and Noticing Agent and (B) Authorizing Retention and Employment of Stretto, Inc. as Administrative Advisor* (the "Application").

**Qualifications**

3.      Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 case. Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Stretto's professionals have acted as debtor's counsel or

official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide.  Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest.  Stretto's active and former cases include: *In re Claim Jumper Acquisition Co.*, Case No. 22-21941 (GLT) (Bankr. W.D. Pa. Oct. 5, 2022); *In re Phoenix Services Topco, LLC*, Case No. 22-10906 (MFW) (Bankr. D. Del. Sept. 28, 2022); *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. July 19, 2022); *In re HONX, Inc.*, Case No. 22-90035 (MI) (Bankr. S.D. Tex. June 24, 2022); *In re Black News Channel, LLC*, Case No. 22-40087 (KKS) (Bankr. N.D. Fla. Apr. 11, 2022); *In re Rockall Energy Holdings, LLC*, Case No. 22-90000 (MXM) (Bankr. N.D. Tex. Mar. 14, 2022); *In re Arian Mowlavi, M.D.*, Case No. 22-10296 (ES) (Bankr. C.D. Cal. Mar. 1, 2022); *In re Watsonville Hospital Corp.*, Case No. 21-51477 (MEH) (Bankr. N.D. Cal. Dec. 8, 2021); *In re Kansas City United Methodist Retirement Home, Inc.*, Case No. 21-41049 (CAN) (Bankr. W.D. Mo. Dec. 3, 2021); and *In re Liberty Power Holdings, LLC*, Case No. 21-13797s (SMG) (Bankr. S.D. Fla. May 25, 2021).

## Services to be Rendered

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Stretto will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "Clerk"), the noticing and claims-related services specified in the Application and the Engagement Letter (see paragraph 6 of the Application detailing Claims Agent Services), and, at the Debtor's request, any related administrative, technical, and support services as specified in the Application and the Engagement Letter (see paragraph 8 of the Application detailing Administrative Advisor Services).  In performing such services, Stretto will charge the Debtor the rates set forth in the

2

Engagement Letter (with its attached "Preferred Rate Structure"), which is attached as <u>Exhibit A</u> to the Application.

5.      Stretto represents, among other things, the following:

(a) With the possible exception of *de minimis* fees and expenses incurred prior to the Petition Date, Stretto is not a creditor of the Debtor;

(b) Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

(c) By accepting employment in this chapter 11 case, Stretto waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

(d) In its capacity as the Claims and Noticing Agent in this chapter 11 case, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e) Stretto will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

(f) Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g) In its capacity as Claims and Noticing Agent in this chapter 11 case, Stretto will not intentionally misrepresent any fact to any person;

(h) Stretto shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i) Stretto will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j) None of the services provided by Stretto as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk.

**<u>Disinterestedness</u>**

6.      I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "<u>Potential Parties in Interest</u>") in this chapter 11 case. The list of Potential Parties in Interest was provided by the Debtor and included, among other parties, the Debtor, its non-debtor affiliates, its officers, directors, and stockholders, its secured

creditors, and its trade creditors.  The Potential Parties in Interest list was compared to an internal database that includes, among others, Stretto's parent entities, affiliates, and subsidiaries. Stretto's internal database also includes Stone Point (Stretto's owner—see disclosure at paragraph 12 below), its funds, and each such fund's respective portfolio companies as set forth in the list most recently provided to Stretto by Stone Point's internal compliance department (the "Stone Point Searched Parties").  The results of the conflict check were compiled and reviewed by Stretto professionals under my supervision.  At this time, and as set forth in further detail herein, Stretto is not aware of any connection that would present a disqualifying conflict of interest.  Should Stretto discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to promptly file a supplemental declaration.

7.    To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither Stretto, nor any of its professionals, has any materially adverse connection to the Debtor, its creditors or other relevant parties.  Stretto has and will continue to represent clients in matters unrelated to this chapter 11 case.  In addition, in matters unrelated to this chapter 11 case, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtor's chapter 11 case.  Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in this chapter 11 case, which services do not directly relate to, or have any direct connection with, this chapter 11 case or the Debtor.  Based upon a review of the Potential Parties in Interest:

- The list of Potential Parties in Interest also identifies UPS, which is a customer of Stretto Recovery Services, as a vendor of the Debtor, but such relationship is unrelated to the Debtor and its estate, assets, or businesses.

- Grant Thornton LLP has been identified as a Potential Party in Interest. John Baumgartner, a Managing Director with Grant Thornton LLP, is a current client of Stretto's depository services business in his individual capacity, but such relationship is unrelated to the Debtor and its estate, assets, or businesses.

- Woolf, McClane, Bright, Allen & Carpenter, PLLC ("Woolf McClane") has been identified as a Potential Party in Interest. Michael Spencer, a Member of Woolf McClane, is a current client of Stretto's chapter 7 software business in his individual capacity, but such relationship is unrelated to the Debtor and its estate, assets, or businesses.

- Additionally, the list of Potential Parties in Interest includes entities, as set forth on Annex 1 attached hereto, which are current, former or potential defendants to avoidance actions brought under the Bankruptcy Code by clients of Stretto Recovery Services. However, to the best of my knowledge, such relationships are materially unrelated to this chapter 11 case.

8.      To the best of my knowledge, none of Stretto's employees are related to bankruptcy judges in the District of Massachusetts, the United States Trustee for Region 1, or any attorney known by Stretto to be employed in the Office of the United States Trustee serving the District of Massachusetts.

9.      Certain of Stretto's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Except as may be disclosed herein, these professionals did not work on any matters involving the Debtor while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when this chapter 11 case was filed. To the best of my knowledge, none of Stretto's professionals were partners of, or formerly employed within the last three years by firms that are Potential Parties in Interest or that have filed a notice of appearance in this chapter 11 case.

10.     Stretto has and will continue to represent clients in matters unrelated to this chapter 11 case.  In addition, in matters unrelated to this chapter 11 case, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtor's chapter 11 cases.  Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in this chapter 11 case, which services do not directly relate to, or have any direct connection with, this chapter 11 case or the Debtor.

11.     Stretto and its personnel in their individual capacities regularly use the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Stretto or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest.  To the best of my knowledge, Stretto does not currently utilize the services of any law firms, investment banking and advisory firms, accounting firms, or financial advisors who have been identified as Potential Parties in Interest or who have filed a notice of appearance in this chapter 11 case.

12.     In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point Capital LLC ("Stone Point").  Stone Point is a financial services-focused private equity firm based in Greenwich, Connecticut.  The firm has raised and managed nine private equity funds—the Trident Funds—with aggregate committed capital of approximately $40 billion.  Stone Point targets investments in the global financial services industry, and related sectors.

13.     The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.  Stretto has searched the names of the Debtor and the names of the Potential Parties in Interest against the Stone Point Searched Parties.

14.     Based solely on the foregoing search, Stretto has determined that neither the Trident VI Funds, Stone Point nor the Stone Point Searched Parties have been identified on the parties in interest list in this chapter 11 case as of the date hereof and to the best of its knowledge, that there are no material connections that require disclosure. To the extent Stretto learns of any additional relevant facts or connections between Stone Point's funds or investments included in the above-described conflicts search and the Debtor that bear on this chapter 11 case, Stretto will promptly file a supplemental disclosure.  Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtor with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

15.     From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be the Debtor or its affiliates, often without Stretto's or its personnel's knowledge.  Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  Each Investment Fund is generally operated as a blind pool, meaning that when the Stretto partners or employees make an investment in the particular Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

16.     From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company that may be one of the Debtor or its affiliates.  Stretto has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, subject to the above, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained.  Subject to the foregoing, upon information and belief, and upon reasonable inquiry through email survey of Stretto's employees, Stretto does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or of any of its affiliates.

17.     To the best of my knowledge, Stretto (a) does not hold or represent an interest adverse to the Debtor's estate; (b) is a "disinterested person" that (i) is not a creditor, an equity security holder, or an insider, (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtor, and (iii) does not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason; and (c) has disclosed all of Stretto's connections with the Debtor, its creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated:  June 29, 2023

_Sheryl Betance_

Sheryl Betance
Senior Managing Director
Stretto, Inc.
410 Exchange, St. 100
Irvine, CA 92602

## Annex 1

ADP INC.
Aon Risk Services, et al.
AT&T
BEACON HILL STAFFING GROUP, LLC
BEST WESTERN PLUS NORTH SHORE INN
Comcast
CONSUMER AFFAIRS
CSC
CT Corporation
Delaware Secretary of State
IBM Corp.
Intralinks, Inc.
KAREN BROWN
Kforce Inc.
Massachusetts Department of Revenue
Michael Best Strategies LLC
Oracle America
Salesforce.com, inc
SHUTTERSTOCK INC
State of California, Dept. of General Services
The Hartford Courant Company, LLC
THE PITNEY BOWES BANK INC
Verizon
W.B Mason

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re:<br><br>VANTAGE TRAVEL SERVICE, INC.<br><br>                    Debtor. | Chapter 11<br><br>Case No. 23-**11060**-JEB |

### DECLARATION RE: ELECTRONIC FILING

I, Sheryl Betance, hereby declare under penalty of perjury that all of the information contained in the foregoing *Declaration of Sheryl Betance In Support of Debtor's Motion for Order (A) Appointing Stretto, Inc. as Claims and Noticing Agent and (B) Authorizing Retention and Employment of Stretto, Inc. as Administrative Advisor* (the "Document"), filed electronically, is true and correct. I understand that this Declaration is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this Declaration may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that pursuant to the Massachusetts Electronic Filing Local Rule (MEFLR)-7(a) all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated: June 29, 2023

*Sheryl Betance*
Sheryl Betance

## **<u>Exhibit C</u>**

[Proposed Order]

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

_____

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| VANTAGE TRAVEL SERVICE, INC. | ) | Chapter 11 |
| | ) | Case No. 23-11060-JEB |
| Debtor. | ) | |

_____

**ORDER FOR ORDER (A) APPOINTING STRETTO, INC. AS
CLAIMS AND NOTICING AGENT AND (B) AUTHORIZING RETENTION
AND EMPLOYMENT OF STRETTO, INC. AS ADMINISTRATIVE ADVISOR**

Upon consideration of the Debtor's Motion for Order: (A) Appointing Stretto, Inc. as Claims and Noticing Agent and (B) Authorizing Retention and Employment of Stretto, Inc. as Administrative Advisor (the "Motion") as financial advisor to the Debtor (the "Motion") filed by Vantage Travel Service, Inc. (the "Debtor"), whereby the Debtor seeks an order of this Court appointing Stretto, Inc. (the "Firm") as claims and noticing agent and authorizing the Debtor to employ the firm on an "as needed" basis to assist and support the Debtor's case administration efforts, on the terms and conditions of the engagement letter agreement dated May 18, 2023 attached as Exhibit A to the Motion (the "Engagement Letter"); and after due deliberation and good cause appearing therefor,

**THE COURT FINDS AND CONCLUDES THAT:**

A.      This Court has jurisdiction over this case under 28 U.S.C. § 1334(b).

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      Due and adequate notice has been given to all parties entitled thereto, and no other or further notice is necessary or required.

D.      This Court has reviewed the Motion and the Declaration of Sheryl Betance in

Support of the Motion and has considered the representations regarding the relief requested

therein.

       E.      The Debtor and the Firm established the compensation provided for in the

Engagement Letter with the express understanding that the hours worked, results achieved and

ultimate benefit of work performed to the Debtor's estate may be variable and have taken this

into account in setting the compensation payable thereunder.

       F.      The relief requested in the Motion is necessary and in the best interests of the

Debtor and its estate.

       **THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**

**THAT:**

       1.      The Motion is granted.

       2.      Pursuant to 11 U.S.C. § 156(c), the Firm is appointed as claims and noticing agent

in this Chapter 11 case, and is directed to coordinate and cooperate with the Office of the Clerk

of this Court (the "Clerk") on the administration and processing of any and all notices and claims

administration matters that in the absence of the Firm's services would be undertaken by the

Clerk.

       3.      Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, the Debtor is

hereby authorized and empowered to employ the Firm as its administrative advisor in this

Chapter 11 case, to perform on an "as needed" basis administrative services beyond the scope of

its claims and noticing agent services, as set forth in the Motion and the Engagement Letter.

       4.      The Engagement Letter (including the Rate Schedule appended thereto) is

approved and the Debtor and the Firm are hereby authorized and directed to perform their

respective obligations thereunder.

5.      Notwithstanding sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016, the Debtor is authorized to compensate Stretto for Claims Agent Services (as defined in paragraph 6 of the Motion) in accordance with the terms of the Engagement Letter upon the receipt of reasonably detailed invoices setting forth the services provided by Stretto and the rates charged for each, and to reimburse Stretto for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

6.      With respect to Claims Agent Services, Stretto shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtor, the Office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party in interest who specifically requests service of the monthly invoices.

7.      The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly Claims Agent Services invoices; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

8.      Without further order of the Court, pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Stretto for Claims Agent Services shall be an administrative expense of the Debtor's estate.

9.      With respect to the Administrative Advisor Services (as defined in paragraph 8 of the Motion), Stretto shall apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date as Administrative Advisor in accordance with the

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any

orders entered in these cases regarding professional compensation and reimbursement of

expenses.

10.     The Debtor's payment of compensation to the Firm for services authorized by this

Order is subject to the authority granted the Debtor under any orders of this Court authorizing the

Debtor's use of cash collateral or other post-petition financing of the Debtor, and any such

payments shall be made only to the extent authorized by any such orders and any approved

budget in connection therewith.

11.     Stretto may apply its prepetition retainer in payment of any invoices for

prepetition services to the Debtor, with any remaining retainer balance to be held by Stretto for

future application in payment of postpetition compensation allowed pursuant to this Court's

order (including this Order).

12.     This Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: _____, 2023              _____
                                        United States Bankruptcy Judge