UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re:<br><br>VANTAGE TAVEL SERVICE, INC.<br><br>　　　　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 23-11060-JEB |

**DECLARATION OF LAWTON BLOOM IN SUPPORT OF MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364 AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014: (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO § 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO § 363 OF THE BANKRUPTCY CODE; (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTY AND DIP FACILITY LENDERS; AND (V) SCHEDULING A FINAL <u>HEARING PURSUANT TO FED. R. BANKR. P. 4001(b) AND (c)</u>**

I, Lawton Bloom, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

　　　1.　　I am a principal of Argus Management Corporation ("<u>Argus</u>") and am authorized to make this declaration (the "<u>Declaration</u>") on Argus's behalf.

　　　2.　　Argus is the financial advisor to the debtor in the above-captioned chapter 11 cases (collectively, the "<u>Debtor</u>").

　　　3.　　I submit this Declaration in support of the DIP Motion[1] filed by the Debtors.

　　　4.　　Except as otherwise indicated herein, all facts set forth herein are based on my personal knowledge, on my review of relevant documents, or on my opinion based upon my

---

[1] The "<u>DIP Motion</u>" means the *Debtor's Motion for Interim and Final Orders Authorizing Secured Financing Pursuant to 11 U.S.C. § 364(D) and Use of Cash Collateral, and Related Relief* (the "<u>Sale Motion</u>")*,* filed substantially contemporaneously herewith.  Capitalized terms used, but not defined herein, shall have the meanings ascribed to such terms in the DIP Motion.

experience and knowledge of these chapter 11 cases. If I were called to testify, I could and would testify competently to the facts set forth herein.

## THE DEBTORS' NEED FOR USE OF CASH COLLATERAL AND DIP FINANCING

5. As of the Petition Date, the Debtor has no unencumbered cash. All of the Debtor's cash is subject to the first priority liens of the Prepetition Lender in connection with the Note. In addition, the Prepetition Lender has first priority liens that secure the Prepetition Secured Debt on all of the Debtor's other assets.

6. The Debtor's need for access to Cash Collateral and the debtor-in-possession financing for which approval is sought in the DIP Motion ("DIP Financing") cannot be understated. The Debtor has virtually no available cash resources at its disposal, and needs access to Cash Collateral and to obtain DIP Financing to, among other things, (i) continue to pay its remaining employees, (ii) pay a limited number of vendors from whom the Debtor requires essential support services (particularly website and other IT services), and (iii) pay other ordinary operating expenses, including amounts needed to pay the Debtor's professionals . Without access to Cash Collateral and the funds proposed to be advanced under the DIP Notes, the Debtor's overall business would come to a halt, causing immediate and irreparable harm to the Debtor, its estate and its creditors. In particular, such a cessation would lead to a loss of the Debtor's remaining workforce, and would jeopardize the consummation of the proposed sale of its assets described in the Debtor's Motion for Authority to Sell Substantially All Assets, Including Certain Executory Contracts, Pursuant to Sections 363 and 365 of the Bankruptcy Code Free and Clear of Liens, Claims, and Interests.

7. As part of the DIP Financing process, the Debtor, with Argus's assistance, has developed a cash flow forecast. This forecast considers a number of items, including, among others, the impact of a bankruptcy filing, cash disbursements, required vendor payments and the

timing of collections. Even with access to Cash Collateral--substantially diminished in light of the Debtor's inability to book and operate trips for its customers—the Debtor would not be able to operate because it simply would not have sufficient funds to meet its payroll obligations. The Debtor thus requires immediate access to postpetition credit to continue to fund their operations. Accordingly, it is necessary that the Debtors have access to DIP Financing.

8. The use of Cash Collateral and the DIP Financing will be subject to a budget (the "Budget"), which was prepared with the assistance of Argus. Following the Petition Date, the Debtor will report its results as compared to the Budget on a weekly and cumulative basis, pursuant to the terms set forth in the DIP Notes. After discussing and working to put together the Budget with the Debtor, I believe that the Budget is reasonable, will allow the Debtor to operate without the accrual of unpaid administrative expenses and will permit the Debtor to continue to make necessary expenditures critical to their business.

9. Unless the Debtor is authorized to use Cash Collateral and the funds proposed to be made available under the DIP Financing in accordance with the Budget on an interim basis pending a final hearing on the DIP Motion, the Debtor will run out of cash immediately and be forced to terminate operations.

10. Without the use of Cash Collateral and access to the DIP Financing generally, the Debtor would be unable to continue to pay its remaining employees or its suppliers of goods and services and would unquestionably be forced to cease operations and liquidate. Instead, the proposed financing arrangement will enable the Debtor to have time to conduct the fair and robust sale process for their assets contemplated by the Sale Motion and the Motion for an Order (A) Approving Procedures Governing Debtor's Proposed Sale of Substantially All Assets Pursuant To Sections 363 and 365 of the Bankruptcy Code, Free and Clear of Liens, Claims, and Interests; (B)

Approving Form and Manner of Notice of Sale; (C) Approving Debtor's Assumption of Asset Purchase Agreement Pursuant to Section 365 of the Bankruptcy Code; and (D) Granting Related Relief  (the "Sale Procedures Motion")..

## REASONABLE TERMS

11.     Given Vantage's current financial condition, financing arrangements, and debt and capital structure, no party was interesting in extending unsecured credit allowable as an administrative expense, or credit secured by liens that were junior or pari passu to the liens of the Prepetition Lender.

12.     Notwithstanding the Debtor's acute need for access to liquidity to fund their chapter 11 cases and the lack of other potential financing sources, the Debtor engaged in arm's length, good-faith negotiations with the DIP Lenders before agreeing upon the terms of the DIP Notes and the Interim Order.  The Debtor ultimately determined, and I agree, that it would be in the best interests of their stakeholders to enter into the DIP Notes with the DIP Lenders.

## ADEQUATE PROTECTION

13.     As adequate protection, the Debtor will provide the Prepetition Lender with (i) replacement liens on the assets of the Debtor that are subject to the Replacement Liens, which shall be subordinate to the liens of the DIP Lenders securing the DIP Notes, (ii) superpriority administrative expense claims solely to the extent of the diminution in value of their interests in the Prepetition Collateral, as applicable, and (iii) weekly reporting regarding the Debtor's actual use of cash as compared to the Budget.  The Prepetition Secured Party has consented to the use of cash Collateral on these terms.  I also believe that the foregoing adequately protects the Prepetition Secured Party.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 29, 2023

*[signature]*
Lawton Bloom

### DECLARATION RE: ELECTRONIC FILING

I, Lawton W. Bloom, hereby declare under penalty of perjury that all of the information contained in the foregoing Declaration (the "Document"), filed electronically, is true and correct. I understand that this Declaration is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this Declaration may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that pursuant to the Massachusetts Electronic Filing Local Rule (MEFLR)-7(a) all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated: June 29, 2023

*[signature]*
Lawton W. Bloom

*[Signature Page for Bloom Declaration in Support of DIP/Cash Collateral Motion]*