**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **VANTAGE TRAVEL SERVICE, INC.,** | ) | **Case No. 23-11060** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

**THE AD HOC COMMITTEE OF CUSTOMERS OF VANTAGE TRAVEL SERVICE, INC.'S PRELIMINARY OMNIBUS OBJECTION AND RESERVATION OF RIGHTS WITH RESPECT TO CERTAIN PENDING MOTIONS**

Mr. Robert Hert ("Mr. Hert") and Mr. Kenneth Schwartz ("Mr. Schwartz" and together with Mr. Hert, the "Ad Hoc Committee") file this preliminary objection and reservation of rights (this "Objection") to the following motions (collectively, the "Motions") filed by Vantage Travel Service, Inc. (the "Debtor") and request that the Court delay entry of final orders with respect to the Motions until such time as an official committee of unsecured creditors is formed to advocate for the interests of all general unsecured creditors in this case, including the more than 800 customers of the Debtor (the "Customers") who participate in the Facebook group Vantage Travel Customers Seek Restitution that is led by Mr. Hert and Mr. Schwartz:

(A)  Debtor's Motion for Interim and Final Orders Authorizing Secured Financing Pursuant to 11 U.S.C. § 364(d) and Use of Cash Collateral, and Related Relief [Dkt. No. 7] (the "Financing Motion");

(B)  Debtor's Motion for an Order (A) Approving Procedures Governing Debtor's Proposed Sale of Substantially All Assets Pursuant to Sections 363 and 3665 of the Bankruptcy Code, Free and Clear of Liens, Claims, and Interests; (B) Approving Form and Manner of Notice of Sale; (C) Approving Debtor's Assumption of Asset Purchase Agreement Pursuant to Section 365 of the Bankruptcy Code; and (D) Granting Related Relief [Dkt. No. 6] (the "Sale Procedures Motion"); and

(C)  Debtor's Motion for Authority to Sell Substantially All Assets, Including Certain Executory Contracts and Personally Identifiable Information of Customers, Pursuant to Sections 363 and 365 of the Bankruptcy Code, Free and Clear of Liens,

Claims, and Interests [Dkt. No. 3] (the "Sale Motion").

## OBJECTION

1.     This Objection is preliminary in nature and intended to preserve the rights of all Customers (and any other general unsecured creditors) until such time as the Committee is formed to provide proper ballast in this case.  Appointment of a Committee is especially appropriate because, when a debtor is liquidating, as is the case here, no particular deference should be paid to its management's judgments regarding the liquidation, and the Committee's views should carry equal, if not superior weight.  *In re Commercial Mortgage and Finance Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (citing *In re S.N.A. Nut Co.*, 186 B.R. 98, 105 (Bankr. N.D. Ill. 1995).

2.     Mr. Hert and Mr. Schwartz are customers of the Debtor who advanced funds to the Debtor for the purpose of taking luxury "trip of a lifetime" journeys with loved ones.  They are filing this Objection to the Motions to protect their interests and those of all similarly situated Customers.  As noted above, Mr. Hert and Mr. Schwartz are the administrators of a Facebook group of aggrieved Customers with more than 800 members known as Vantage Travel Customers Seek Restitution.

3.     As spokesmen and leaders of this group, Mr. Hert and Mr. Schwartz timely submitted questionnaires to the United States Trustee (the "UST") volunteering to serve on any official committee of unsecured creditors (the "Committee") that gets formed in this case.  They have also provided the UST with a petition signed by more than 500 Customers who are members of Vantage Customers Seek Restitution requesting appointment of a committee of Customers.

4.     At bottom, the Ad Hoc Committee requests that the Court slow proceedings in this case until such time as the Committee is formed.  This request is made with respect to all three of the Motions – the Financing Motion, the Sale Procedures Motion, and the Sale Motion.

5.     The Motions appear to be the "whole ball of wax" in this case – yet they would

2

authorize a sale of the Debtor's assets with minimal post-petition marketing while also providing protections for Mr. Henry R. Lewis and the Henry R. Lewis Trust u/t/d, notwithstanding the unexplained disappearance of more than $108 million of Customer funds. Mr. Lewis should not be permitted to use the Motions to facilitate a quick sale while also erecting barriers to investigation and recovery of claims against him.

6.     With respect to the Financing Motion, the Ad Hoc Committee incorporates by reference the objections and arguments of the United States Trustee in its filings at Docket Entries 38 and 128 as well as the objection of Airline Reporting Corporation's objection at Docket Entry 119.[1] The Ad Hoc Committee notes that due to these objections and comments from the Court, a final order has not yet entered and that many objectionable provisions have been altered. However, given the fast speed of this case, the extremely limited marketing, and the limited budget provided, the Ad Hoc Committee believes that no final order should be entered until such time as a Committee is appointed and can retain counsel so that this important milestone in the case does not pass by without the opportunity for push-pull negotiations that are fundamental to chapter 11 and which require participation of the Committee.  Moreover, there are serious questions that must be answered regarding property interests in deposits provided by Customers, where those funds are now, and why Mr. Lewis should be permitted to receive any funds whatsoever until these questions are answered.

7.     While the Court has already granted the Sale Procedures Motion, the Ad Hoc Committee objects to the relief granted due to, among other things, the wholly inadequate time for marketing, inadequate consultation rights for any Committee, and break-up fee of 30% of the proposed *cash price* of the stalking horse bidder (excluding speculative future consideration),

---

[1]     While a Carve Out (as defined in the Financing Motion) is provided for the administrative expenses of professionals for the Debtor and any Committee, it is limited to budgeted amounts, and the such budgeted amounts should not be set finally without a Committee being appointed and having the opportunity to retain counsel.

which is far in excess of any typical amount. *See In re Metaldyne Corp.*, 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("The total amount of the proposed break-up fee and expense reimbursement is less than 3% of the total purchase price. This falls within the range of what courts in this jurisdiction have found to be acceptable break-up fees."); *see also In re JW Resources, Inc.*, 536 B.R. 193, 195 (Bankr. E.D.K.Y. 2015) ("[Break-up] Fees in the range of 1% to 2% of the purchase price are often approved.") (citations omitted).

8.     While the Debtor, in footnote 4 to the Sale Procedures Motion, points to *speculative* potential future non-cash consideration that is years away as a basis to justify the break-up fee, the APA (as defined in the Sale Procedures Motion) was negotiated pre-petition, will have a direct impact on Customers (who may not want the travel credits offered), and, as a result, is highly suspect. *See In re 14605, Inc.*, No. 05-11910 MFW, 2007 WL 2745709, at *4 (Bankr. D. Del. Sept. 19, 2007) ("Particularly in cases where an asset purchase agreement has been negotiated and signed pre-petition, the Court expects the Committee to be active in reviewing and, if appropriate, objecting to bid procedures requested by the stalking horse bidder that may seek to chill other bids[,]" and "welcomes efforts by the Committee, whose members may have additional insight into the industry, to attract additional bidders for the assets"). At the end of the day, participation of a Committee is vital to ensure the interests of all constituencies are considered—not just those of the Debtor and Mr. Lewis. *In re Channel Master Holdings, Inc.*, 309 B.R. 855, 862–63 (Bankr. D. Del. 2004) (in context of fee application, stating that committee owed a fiduciary duty to constituents to insist on fair bid procedures, and that such efforts can result in substantially increased bids and greater recovery for unsecured creditors).

9.     The Ad Hoc Committee also objects to the Sale Motion for many of the reasons set forth above. Again, participation of a Committee is vital to ensure the interests of all creditors, including Customers, are properly considered. The Ad Hoc Committee objects to approval of

any sale on the current timeline and until such time as the Committee can be formed so that the interest of general unsecured creditors can be adequately represented.

10.    Lastly, the Ad Hoc Committee wishes to bring to the Court's attention concerning facts and allegations against the Debtor and Mr. Lewis requiring participation by a Committee for investigative purposes.  Attached hereto as **Exhibit A** is a complaint (the "PA Complaint") filed by the Commonwealth of Pennsylvania against the Debtor and Mr. Lewis, personally.  The PA Complaint is dated June 8, 2023, and was filed in the Court of Common Pleas of Allegheny County, Pennsylvania.

11.    The PA Complaint contains a number of consumer protection causes of action with common allegations in paragraphs 11 through 24 to which the Ad Hoc Committee respectfully directs this Court's attention.  These paragraphs are reproduced as follows:

11. This case is about a tour operator that has failed to fully and timely issue cash refunds to Pennsylvania consumers for their cancelled travel tours by deeming those tours "postponed" or "rescheduled" rather than canceled, thereby effectively forcing consumers to either rebook a new tour after years of delay or initiate their own cancellation request for a partial refund that is subject to a per-person cancellation penalty of up to one-hundred percent (100%) the tour's purchase price.

12. In short, Defendants have engaged in deceptive and unfair business practices by promising "risk-free" travel, but in reality, Defendants misapply their terms and conditions by taking large sums of consumers' monies and then fail to provide meaningful relief for consumers when they cannot travel. As a consequence, consumers are consistently left with no trip and out of pocket thousands of dollars.

[. . .]

17. Declaring that Tours have only been "postponed" months or years from their intended departure dates, as opposed to "cancelled," Defendants have refused to issue full cash refunds to Pennsylvania consumers for their unfulfilled Tours, and instead have booked the consumers on new Tours without consultation and/or issued them a future travel credit for purposes of booking a new Tour – even in instances where the consumer is not interested or is not physically capable of going on a different Tour.

20. In numerous instances where Defendants represented to consumers that they would be issuing a cash refund, Defendants either did not issue the represented

5

refund and/or did not issue any such refund to the consumer for months to a year or more.

21. In numerous instances, Defendants have advertised, offered for sale, sold, and accepted payments from consumers for Tour reservations when Defendants knew or reasonably should have known that such travel reservations could not be fulfilled on their purchased departure date, later advising those consumers that their Tour had to be "postponed" for sometimes years.

22. In numerous instances, Defendants have also repeatedly assured their consumer base, many of whom sixty (60) years of age or older, that purchasing a Tour, or re-booking an affected Tour, would be a risk-free investment – even though purchasing such a Tour came with the very real risk of the consumer being stuck with travel credits for their indefinitely "postponed" Tour or a highly-delayed, partial cash refund as reimbursement for their purchased Tour that would be subject to Defendants' cancellation fee schedule.

12.     The Ad Hoc Committee directs the Court's attention to the foregoing allegations because they highlight the need for representation of Customers in this case through formation of a Committee as quickly as possible and for a Committee to conduct customary investigations into claims that the estate may hold, including into the validity of alleged debt obligations of Mr. Lewis and affiliates.

## **REQUEST FOR WAIVER OF D. MA. LBR 9013-2(i)**

13.     The Ad Hoc Committee requests a waiver of the requirement that it admit or deny each of the allegations contained in the Cash Collateral Motion or that the Court set a deadline to do so prior to a hearing granting the Motions on a final basis.

## **RESERVATION OF RIGHTS**

14.     The Ad Hoc Committee expressly reserves all rights, claims, arguments, defenses, and remedies with respect to the Motions or any other issue in this chapter 11 case.  The Ad Hoc Committee further reserves the right to supplement, modify, or amend this objection or to seek discovery or raise additional objections orally or in writing.

15.     Lastly, the Ad Hoc Committee files this Objection protectively to ensure the rights

of general unsecured creditors, including Customers, are protected and that to alert the Court to the fact that there are hundreds and hundreds of Customers eagerly awaiting the opportunity to have their interests protected by appointment of a Committee.  The Ad Hoc Committee is not a statutory committee and does not intend to bind a statutory committee by the filing of this Objection.

## **CONCLUSION**

Based on the foregoing, the Ad Hoc Committee respectfully requests that the Court (A) defer entering final orders on the Motions, (B) continue pending hearings pending appointment of a Committee, (C) convene a hearing to establishing sales procedures that do not prejudice the rights of general unsecured creditors, and (D) grant such further and additional relief as the Court deems proper.

Date: August 1, 2023

*/s/ Andrew C. Helman*
Andrew C. Helman (BBO# 679155)
DENTONS BINGHAM GREENEBAUM LLP
One Beacon Street, Suite 25300
Boston, Massachusetts  02108
(207) 619-0919
andrew.helman@dentons.com

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew C. Helman, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document (with exhibits) to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service, which served the same on the parties receiving notice via the CM/ECF system.

Date: August 1, 2023

*/s/ Andrew C. Helman*
Andrew C. Helman (BBO# 679155)
DENTONS BINGHAM GREENEBAUM LLP
One Beacon Street, Suite 25300
Boston, Massachusetts  02108
(207) 619-0919
andrew.helman@dentons.com