UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re:<br><br>VANTAGE TRAVEL SERVICE, INC.<br><br>　　　　　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 23-11060-JEB |

## DECLARATION OF PETER S. KAUFMAN
## IN SUPPORT OF DEBTOR'S SALE MOTION

I, Peter S. Kaufman, hereby declare as follows:

1. I am President and Head of Restructuring and Distressed M&A at Gordian Group, LLC ("Gordian"), an investment banking firm with a particular focus on, and substantial expertise in, refinancing, recapitalization, and sales and acquisitions of distressed companies. Gordian maintains offices at 950 Third Avenue, New York, NY 10022. I have been actively involved in investment banking work, particularly in connection with transactions involving distressed and other special situation companies, for over 30 years. I am authorized to make this declaration on Gordian's behalf.

2. Except as otherwise indicated herein, all facts set forth herein are based on my personal knowledge, on my review of relevant documents, or on my opinion based upon my experience and knowledge of the facts preceding the chapter 11 case of Vantage Travel Service, Inc. (the "Debtor"). If I were called to testify, I could and would testify competently to the facts set forth herein.

3. I submit this declaration in support of the *Debtor's Motion for Authority to Sell Substantially All Assets, Including Certain Executory Contracts, Pursuant to Sections 363 and 365*

1

*of the Bankruptcy Code, Free of Liens, Claims, and Interests* filed on June 29, 2023 [Dkt. No. 3] (the "Sale Motion").

4. In August of 2021, Gordian was retained as the investment banker for Mr. Henry Lewis, who indirectly owns 100% of the common stock of the Debtor, and various other entities controlled by Mr. Lewis (the "HRL Entities").[1] Gordian did not represent the Debtor, although, as detailed below, its marketing activities encompassed seeking financing for or a buyer with respect to the Debtor. As further described below, the HRL Entities included entities that owned river and ocean vessels that were chartered to the Debtor and through which the Debtor conducted its operations.

5. The purpose of Gordian's engagement was to advise the HRL Entities on potential sources of capital, transactions structures or possible buyers for the equity in or the assets of the various entities in the luxury travel business. The various HRL Entities hold ownership interests (alone or in connection with other unaffiliated investment partners) in two river vessels, previously chartered by the Debtor for the operation of the Debtor's cruises in Europe; a river vessel previously chartered by the Debtor for operation of cruises the Debtor operated on the Nile; and two entities each owning an interest in an oceangoing vessel, which the Debtor previously charteredfor expedition travel throughout the world. The Debtor provides the administrative offices through which travel packages are booked and travel arrangements made. Through charter agreements with the vessel-owning entities, the Debtor facilitated the travel plans made by its customers, including flights to points of debarkation, travel insurance, hotel accommodations, and excursions (among other things). Our task was to explore the alternatives to sell some or all of

---

[1] The entities which retained Gordian are: The Henry R. Lewis Trust; HRL Bahama Holdings Ltd.; HRL Egypt; HRL European River Cruise Venture I GmbH; HRL European River Cruise Venture II GmbH; HRL European River Cruise Venture III GmbH; HRL European River Cruise Ventures B.V.; HRL European River Cruise Ventures, LLC; HRL River Navigator; HRL Safari; and Vantage Services GmbH.

2

these entities, find a transaction partner to operate certain of these businesses, and/or to procure new capital to operate any of them.

6. When Gordian began its work, the Debtor's business was experiencing significant distress as a result of the COVID-19 pandemic. For a number of months, its tours had been postponed, and revenues had dropped significantly from earlier levels, causing the Debtor to rely on cash reserves generated by pre-pandemic bookings to fund its working capital needs. By August, 2021, the pandemic had eased somewhat, and the HRL Entities were seeking new capital in order to finance an anticipated recovery in the travel industry.

7. Upon the commencement of Gordian's engagement, Gordian developed a list of strategic and financial buyers with significant presence or interest in the travel industry, whom Gordian believed would be the most likely to have interest in a transaction with some or all of the HRL Entities. Sourcing potential buyers required Gordian to develop deep background in the luxury travel business, a process itself lasting several months. During this period, Gordian prepared a marketing teaser and a confidential information memorandum (CIM) containing historical information and projections concerning both the Debtor's business as well as the opportunities surrounding acquisition of the various vessels in which certain of the HRL Entities has an interest.

8. Gordian's market outreach began in earnest in October, 2021. The process commenced with the dissemination of the teaser and a process letter to 76 parties. The process letter invited the potential buyers to execute a nondisclosure agreement in order to obtain access to the data room we established; set a deadline for indications of interest at November 19, 2021; and set a deadline for final bids of January 31, 2022. Parties were invited to a management presentation, which took place on November 15, 2021, and the presentation was recorded and

posted in the data room together with the CIM and other information relating to the Debtor and relevant travel-related affiliates. As is our practice for transactions such as these, we followed up the teaser and the process letter with telephone and email contacts, in order to more precisely gauge the interest of the potential bidders and focus on their information requests.

9. As a result of our solicitation work, as of November of 2021, we had received 21 executed NDA's. Of these, 10 parties declined to proceed further after initial due diligence review. 15 groups (some of which had not yet executed an NDA) indicated that they remained interested in a transaction, but it became clear to us during this period that the interest was not strong. Parties gave a variety of reasons for their reluctance: chief among these were continued concerns over the pandemic (at the time, the Omicron variant was still peaking); concern for the reliability of the Debtor's projections for ocean-going expedition cruises, as the Debtor had historically operated mostly river cruise expeditions; and the high level of customers' advance payments for trips which (largely because of COVID) had been postponed to an unspecified future date, and those advanced payments' relationship to the company's negative working capital.

10. In light of the foregoing results, Gordian's marketing process was put on hold for a short period. Thereafter, in January, 2020, we engaged in another outreach to the [ten] most interested potential acquirers, but found once again that there was not strong interest in a transaction. After another pause in our work, we engaged in a third solicitation in April of 2022, this time focusing on potential sources of financing. We spent three months facilitating due diligence review and negotiating a term sheet with one potential investor, but their interest ultimately waned. We then actively negotiated with a separate party on (among other things) the terms of a potential financing of the Debtor's business, exchanging multiple term sheets between November, 2022 and January, 2023. That financing would have required significant collateral

4

support from the assets of the HRL Entities and other non-Debtor entities, but even that significant (non-Debtor) collateral support was insufficient to address the potential financier's concerns. Negotiations with that party ended in January without an agreement, leaving Gordian once again to seek a potential acquirer or source of new capital for Mr. Lewis's travel businesses.

11. In early 2023, we were contacted by representatives of Nordic Hamburg GmbH ("Nordic"), a multinational ship building, development and management firm with a subsidiary in the deluxe cruise industry. Nordic expressed interest in acquiring the Debtor's business and the ocean-going vessels owned by its affiliates. Negotiations over a potential transaction proceeded deliberately, and ultimately resulted in a term sheet for a transaction that, among other things, provided for Nordic's acquisition of the stock of the Debtor and the two ocean-going ships indirectly owned in part by its affiliates. In Gordian's view, this was a very positive transaction for both the Debtor and its customers, as it would have had Nordic taking on responsibility for all of the Debtor's obligations for trips booked and paid for, in whole or in part, resulting in complete relief for all such customers.

12. Further negotiations over the details and documentation of the proposed transaction proceeded during March and April of this year, and Nordic also expressed an interest in acquiring the Europe-based river vessels. However, the Debtor then suffered a crippling cyberattack that has been well publicized.

13. By the second week of May 2023, it became apparent that Nordic would not proceed with the transaction set forth in the term sheet. By the third week of May, the parties had pivoted to an alternative transaction structure, the final version of which is the subject of the Sale Motion.

14. In the interim, Gordian worked with another prospect, Pacific Travel Partners ("Pacific"), which had expressed interest in the Debtor's assets as well as potentially in one or more of the ocean vessels. Gordian, the Debtor's management and the Debtor's financial advisor worked diligently with Pacific in the weeks leading up to the petition date in an effort to create an alternative stalking horse for the Debtor's assets. Pacific made an offer for the Debtor's assets, but in the end was not able to make a definitive offer that surpassed the economics offered by Nordic.

15. In accordance with the Court-approved sale procedures [Dkt. No. 64] and at the Debtor's direction, Gordian provided the Debtor with Gordian's list of prospective bidders in early July for the Debtor's solicitation of competing bids to that made by Nordic, and provided access to the data room maintained by Gordian to those prospects identified by the Debtor to be eligible for access. Gordian also joined the Debtor and its financial advisor in calls with prospective bidders to answer questions and provide information about the sale transaction structure embodied in Nordic's stalking horse bid. On the competing bid deadline (August 3, 2023), Pacific filed a competing bid for the Debtor's assets, as reflected by its notice filed with the Court [Dkt. No. 193]. To my knowledge, this was the only competing bid resulting from the marketing process administered by Gordian prepetition and continued by the Debtor post-petition pursuant to the sale procedures.

16. Based on the foregoing, I believe that, through Gordian's extensive efforts, the universe of potential buyers has been diligently sourced and solicited, but that a combination of the post-pandemic condition of the travel industry and the Debtor's substantial negative working capital has resulted in limited interest for the Debtor's assets. After two years of sales and marketing efforts—and given the extraordinary flexibility on the structure of any transaction that

Gordian and the HRL Entities solicited—I believe these efforts reflect a comprehensive and representative market process.

    I declare under penalty of perjury under that the foregoing is true and correct to the best of my knowledge, information and belief.

    Executed this 7th day of August, 2023 at New York, New York.

_____
Peter S. Kaufman

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re:<br><br>VANTAGE TRAVEL SERVICE, INC.<br><br>                                          Debtor. | Chapter 11<br><br>Case No. 23-11060-JEB |

**DECLARATION RE: ELECTRONIC FILING**

      I, Peter S. Kaufman, hereby declare under penalty of perjury that all of the information contained in my foregoing Declaration (the "Document") filed by the Debtor electronically concurrently herewith, is true and correct to the best of my knowledge, information, and belief. I understand that this DECLARATION is to be filed with Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this DECLARATION may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

      I further understand that pursuant to the Massachusetts Electronic Filing Local Rule (MEFR) 7(b), all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated:  August 7, 2023                  Signed:_____
                                                               Peter S. Kaufman

## **CERTIFICATE OF SERVICE**

    I, Michael J. Goldberg, hereby certify that on this 8th day of August, 2023, I caused the foregoing ***Declaration of Peter S. Kaufman In Support of Debtor's Sale Motion*** to be served by email through the Court's CM/ECF system on all registered users thereof in this case.

Dated:  August 8, 2023                               */s/ Michael J. Goldberg*
                                                                       Michael J. Goldberg, BBO# 551869
                                                                       Casner & Edwards, LLP
                                                                       303 Congress Street
                                                                       Boston, MA 02210
                                                                       Tel: 617-426-5900
                                                                       Email: goldberg@casneredwards.com