UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |
|---|---|
| In re:<br><br>VANTAGE TRAVEL SERVICE, INC.<br><br>Debtor. | Chapter 11<br><br>Case No. 23-11060-JEB |

### DEBTOR'S OMNIBUS RESPONSE TO OBJECTIONS TO DEBTOR'S SALE MOTION

Vantage Travel Service, Inc. (the "Debtor") hereby responds to the multiple filed objections to the *Debtor's Motion For Authority To Sell Substantially All Assets, Including Certain Executory Contracts, Pursuant To Sections 363 And 365 Of The Bankruptcy Code, Free And Clear Of Liens, Claims, And Interests* dated June 29, 2023 [Dkt. No. 3] (the "Sale Motion"). A summary chart of such filed objections (collectively, the "Objections") that lists, for each objection, the basis or bases for the objecting entity's objection to the Sale Motion (and to the proposed sale transaction that is the subject of the Sale Motion) is attached as Exhibit A (the "Objections Chart"). Because many of the Objections overlap one another, and because some Objections are joinders to another Objection, the Debtor submits that addressing the Objections on an issue-by-issue basis as set forth in the Objections Chart (rather than on an objector-by-objector basis) will promote the efficient and comprehensive consideration of the Objections. This omnibus response to the Objections will address each Objections Chart issue in turn, providing the Debtor's response to each.

***The Sale Is Occurring Too Fast And Must Be Delayed Until A Creditors' Committee Can Weigh In***

1.  As stated in the Sale Motion, the proposed sale that is the subject of such motion (the "Proposed Sale") is the culmination of a sale process commenced two years ago, in August 2021, and is made possible solely by reason of post-petition financing provided by the stalking horse bidder and the Debtor's principal owner and prepetition secured lender.  [*Sale Motion*, Dkt. No. 3 at pp. 4 – 8; *Declaration of David L. Herman* [Dkt. No. 15, at ¶¶ 4 – 13]; *Declaration of Lawton W. Bloom* [Dkt. No. 17, at ¶ 10.]]  The financing made available to the Debtor is tailored to the court-approved sale process and does not permit an extension of that process, and the Debtor's marketing efforts have made clear that any extended sale process would not uncover other prospective bidders or otherwise result in creating greater value than that to be achieved through the existing process.  Those efforts were nevertheless appropriate in light of the length of time the Assets were marketed prior to the commencement of this Chapter 11 case.  Specifically, as set forth in the *Declaration of Michael J. Goldberg In Support of Debtor's Sale Motion* filed on August 8, 2023 [Dkt. No. 220] (the "Goldberg Declaration"), the Debtor contacted 136 parties identified by the Gordian Group, LLC ("Gordian") as potential purchasers, to ascertain those parties' interest in acquiring the Assets.  Inquiries were received from a handful of the parties on the Gordian list, and responded to with data room access as requested.  And, the Debtor received Qualified Bids from two potential purchasers (including the stalking horse bidder whose offer was described in the Sale Motion), and conducted an auction in which both Qualified Bidders participated.  In light of the foregoing, there is simply no support for an argument that more time would produce a better result.

2. The United States Trustee has a statutory duty to appoint a committee of unsecured creditors as soon as practicable after commencement of a Chapter 11 case. 11 U.S.C. § 1102(a). The United States Trustee failed to perform its statutory duty in this case, despite the overwhelming interest among creditors that a committee be formed. In any event, the United States Trustee and others have carried the "sale objection" water that would properly have been carried by a committee, and the United States Trustee has finally appointed a committee that can now weigh in on the Sale Motion, albeit within existing time constraints.

***The Sale Constitutes A Continued Fraudulent Scheme And Must Await A Forensic Accounting Of All Debtor Transactions With Affiliated Entities Controlled By Henry R. Lewis***

3. The Objections are replete with allegations of fraud or improper conduct by the Debtor and Mr. Lewis, and at times seem to imply that the Proposed Sale is a mere continuation of some fraudulent scheme. The Debtor understands the anger felt by many of the objecting parties (and many, many others similarly situated) over the potential loss of significant sums paid to the Debtor by its customers and other creditors. The Debtor acknowledges that harm. But alleviation of harm caused by the Debtor's prepetition conduct is not the test for determining whether the Proposed Sale should be approved. The Debtor has ceased operations and is trying to realize the maximum value of its assets. It is the Debtor's considered business judgment that the Proposed Sale is the best way to maximize the value of the assets being sold.

4. Equally important, the Debtor is not selling the estate's claims against Mr. Lewis, any affiliated entity, or anyone else—those claims, such as they may exist, are retained and preserved for the benefit of the estate. And while a forensic accounting may be appropriate or necessary to determine the existence and scope of any such claims, any such accounting is not relevant to whether the Proposed Sale will maximize the value of the assets that are being sold.

Waiting for the completion of such an examination to close the Proposed Sale will only result in the loss of the value of the "customer credit" and other benefits provided for in that transaction—to the detriment of the Debtor's customers and other creditors. In light of the preservation of all claims held by the estate against insiders and others, this simply cannot be in the best interests of the Debtor's creditors or the estate.

### *No Cash Refund To Customers*

5.      The *pro se* Objection filed Eileen P. Ronan [Dkt. No. 212] contends that the sale is improper because funds are not being returned to customers. The Debtor submits that the Sale Motion does not propose to address the issue of distributions to general unsecured creditors, and that such issue is not before the Court for determination at this time. Whatever future determination may be made on that issue, it is not necessary to determine that issue to decide the Sale Motion, and the lack of such determination is not a valid ground on which to deny the Sale Motion.

### *The Debtor Cannot Sell The "Customer Trust Funds"*

6.      The Debtor has confirmed with both the stalking horse bidder and the competing qualified bidder that each will forgo the opportunity to acquire legal title to the "Customer Trust Funds" in order to administer such funds for the benefit of the affected customers. The Customer Trust Funds will accordingly not be included in the Proposed Sale, and any determination of rights to such funds will await further proceedings and order of the Court. If necessary or appropriate, the Debtor will propose sale order language to confirm this changed circumstance.

*The Debtor Cannot Sell Or Assign The Surety Contracts/Bonds*

7. The Objection of American Contractors Indemnity Company ("ACIC"), United States Surety Company ("USSC"), U.S. Specialty Insurance Company ("USSIC" and, collectively with ACIC and USSC, and their affiliated sureties, "Surety") [Dkt. No. 190] raises a limited objection to the Proposed Sale—that it not involve the sale or assignment of the surety contracts and bonds issued by the Surety, and that it not vitiate the Surety's rights with respect to such contracts and bonds and collateral posted by the Debtor with respect thereto. The Debtor has previously addressed the Surety's related concerns raised in the context of the Debtor's financing motion. The Sale Motion does not propose to sell the Surety's contracts or bonds, nor to transfer any collateral posted for the Surety's benefit. Thus, the Proposed Sale will not vitiate the Surety's contractual rights or collateral remedies. The Surety's insistence in the Objection (and its proposed sale order language) that the Debtor retire and the purchaser replace the Surety's contracts and bonds is misplaced; the Surety is not entitled to nor has it asserted any grounds for this requested relief, and such relief has nothing to do with the Proposed Sale.

*The Debtor Cannot Sell Its Customers' Personally Identifiable Information*

8. Two Objections (those of Annette Woolf [Dkt. No. 186] and the Carmichaels [Dkt. No. 214]) contend that the sale of customers' personally identifiable information (PII) is impermissible, and the Woolf Objection more specifically contends that the sale of PII is not permitted under applicable provisions of the California Civil Code. Those contentions lack legal support. Bankruptcy Code Section 363(b)(1) permits a debtor to sell PII in connection with a proposed asset sale under two circumstances: (i) the sale must be consistent with the Debtor's existing privacy policy, or (ii) after the appointment of a consumer privacy ombudsman, the Bankruptcy Court approves the sale after (A) giving due consideration to the facts, circumstances

5

and conditions of the sale, and (B) finding that no showing was made that the sale violates applicable non-bankruptcy law. 11 U.S.C. §363(b)(1).

9. As a threshold matter, the Debtor's existing policy does not prohibit the sale of PII. Although the consumer privacy ombudsman appointed in this case (the "CPO") has concluded otherwise, the Debtor continues to believe that the proposed sale of PII is consistent with its existing privacy policy and therefore permitted under Section 363(b)(1)(A).

10. More important, the Proposed Sale meets all of the requirements of Bankruptcy Code Section 363(b)(1)(B). As mandated by the statute, a CPO has been appointed [Dkt No. 60], and, in his *Report of the Consumer Privacy Ombudsman* dated July 20, 2023 [Dkt. No. 102] (the "CPO Report"), the CPO has endorsed the Proposed Sale, subject to the winning bidder's adoption of the recommendations set forth in the CPO Report. Each of the stalking horse bidder and the competing qualified bidder has confirmed its agreement to adopt those recommendations.

11. The bidders' agreement to comply with the CPO Report's recommendations provides compelling support for this Court's approval of the Proposed Sale, including the sale of the PII. By agreeing to adopt the CPO's recommendations, the "Winning Bidder" (once selected) has agreed to the following conditions of sale:

(a) All customer credit card numbers, ACH-related information and passport numbers will be excluded from the Assets being sold;

(b) The Winning Bidder has agreed to abide by the Debtor's privacy policy;

(c) The Winning Bidder has agreed to provide "opt-out" rights to the Debtor's customers upon the consummation of the Proposed Sale, and the Debtor's customers will be given notice of that opt-out right;

(d)     The Winning Bidder has agreed to comply with the privacy laws of all jurisdictions in which it will conduct business; and

(e)     The Winning Bidder has agreed to provide notice to the Debtor's customers of any change in its privacy policy that renders it less favorable to consumers.

Additionally, the Debtor has agreed to the destruction of the PII in its possession in a reasonable time after the closing of the Proposed Sale.

12.     Thus, as recognized by the CPO, there can be no meaningful dispute that the Proposed Sale's transfer of the PII is warranted by the facts, circumstances and conditions of sale. Further, there has been no showing that the Proposed Sale violates applicable non-bankruptcy law. Although the Woolf Objection cites the Proposed Sale's noncompliance with the California Consumer Privacy Act, the Proposed Sale actually complies with that statute. Specifically, the California statute provides that the Act does not prohibit transfers of personal information that is part of a "merger, acquisition, bankruptcy, or other transaction in which the third party assumes control of all or part of the business, provided that information is used or shared consistently with this title." Cal. Civ. Code §1798.140. By adopting the recommendations of the CPO Report, the Winning Bidder has brought the Proposed Sale within the safe harbor of the California law; accordingly, there has been no showing that the Proposed Sale would violate applicable non-bankruptcy law. For the foregoing reasons, each of the Woolf Objection and the Carmichaels Objection should be overruled by the Court.

***The Sale Stems From A Flawed Sale Process***

13.     One Objection (that of Messrs. Hert and Schwartz) [Dkt. Nos. 173 and 195] contends that the Proposed Sale stems from a flawed sale process that has included a too-short marketing period. As noted, the Debtor has spent the past two years seeking a buyer or investor

that could place the Debtor's business operations on firmer financial ground. That sale process was overseen by Gordian, a preeminent investment banking firm specializing in distressed situations, and has been exhaustive in scope and duration. Gordian's process is described in detail in the *Declaration of David L. Herman In Support of Debtor's Sale Motion and Sale Procedures Motion* filed on June 29, 2023 [Dkt. No. 15] and the *Declaration of Peter S. Kaufman In Support of Debtor's Sale Motion* filed on August 8, 2023 [Dkt. No. 219] (together, the "Gordian Declarations"). Post-petition, the sale process has been conducted in accordance with the Court-approved sale procedures, which were geared to the prompt solicitation of competing bids from prospects identified through Gordian's lengthy prepetition sale process, and to ensure that appropriate disclosures be made concerning any proposed related transaction involving non-Debtor parties or assets, as set forth in the *Declaration of Michael J. Goldberg In Support of Debtor's Sale Motion* filed on August 8, 2023 [Dkt. No. 220] (the "Goldberg Declaration"). As set forth in the Goldberg Declaration, the Debtor emailed solicitations to 136 prospective bidders identified through Gordian's prepetition marketing process, entertained expressions of interest from several of those parties, and provided data room access where requested. The Debtor's post-petition process has resulted in a meaningful competing bid, and an auction. The Debtor submits that, whatever discontent parties may feel about the exigencies of the bankruptcy sale process and the results achieved, the sale process itself has been comprehensive and extensive.

### *The Debtor Has Failed to Exercise Reasonable Business Judgment*

14. The Objection filed by the United States Trustee [Dkt. No. 192] (and the joinder Objection of each of Airlines Reporting Corporation [Dkt. No. 194] and the Pennsylvania Attorney General [Dkt. No. 196]) asserts that the Proposed Sale does not constitute an exercise

8

of reasonable business judgment by the Debtor, and accordingly cannot be approved. The Debtor is confident that, at the conclusion of the sale hearing, the Debtor's reasonable business judgment in pursuing the Proposed Sale will be amply supported by the record.

### *The Sale Does Not Provide Sufficient Value To The Estate*

15. The Debtor has ceased operations, and has no hope of restarting them. Its assets have no use or value to the Debtor, other than the value for which they can be sold. The Debtor obtained a stalking horse bid for the assets, and has now obtained a competing bid. An auction involving those bidders will determine the value that the estate is to receive from the assets. The Debtor does not have the luxury of conducting a reserve auction at which a minimum price must be offered to acquire the assets, and insisting on any such minimum value beyond what the auction will produce would impair, not improve, the estate's recovery.

16. Just as important, there is no term of sale—other than the repayment of the post-petition financing extended by the stalking horse and one of the Debtor's owners—that provides for the distribution of sale proceeds at closing. Notably, a substantial portion of the sale consideration won't be earned until months or years after closing. There will be ample time for the Court to determine the appropriate distribution of sale proceeds, whether to the Debtor's secured creditor or others. That such determination will be made post-closing is no reason to deny approval of the Proposed Sale.

### *The Sale Does Not Provide Any Benefit To Non-Insider Creditors*

17. The Debtor's prepetition secured lender has a first priority security interest in the assets to be sold, and in the proceeds of any sale of such assets. The projected sale proceeds are far less than the more than $35 million owed by the Debtor to such lender, such that there would appear to be no benefit to general unsecured creditors from the sale. That outcome does not

require disapproval of the Proposed Sale; there is no Bankruptcy Code requirement that a sale benefit general unsecured creditors. The Proposed Sale will potentially benefit many general unsecured creditors, through the bidders' agreement to permit the Debtor's customer creditors to credit their claims against the Debtor to future travel with the Winning Bidder. And even if the sale proceeds are directed to the secured lender, nothing prohibits creditors from negotiating with the secured lender over the appropriate disposition of the sale proceeds (a typical Chapter 11 dynamic). At the very least, the secured lender's receipt of sale proceeds would make the secured lender better able to satisfy any future judgment that the Debtor's creditors might obtain against the lender.

### *Inadequate Disclosure Regarding Assumed Contracts*

18. One Objection (that of Messrs. Hert and Schwartz) [Dkt. Nos. 173 and 195] contends that there has been inadequate disclosure regarding contracts proposed to be assumed by the buyer, suggesting that contracts benefiting Mr. Lewis or his non-Debtor affiliated entities might be assumed by the buyer. First, the Debtor has identified the contracts proposed to be assumed, and provided notice to the non-Debtor contract parties of such proposed assumption [Dkt. Nos. 87 and 97]. No such contract party has objected to the Proposed Sale, or to the Debtor's proposed assumption and assignment of the relevant contract. Two, none of these contracts is with Mr. Lewis or an affiliated entity. Three, any cure costs associated with assumption and assignment of such contracts is to be borne by the buyer—not the Debtor's estate—so there is no burden or disadvantage to the estate resulting from such assumption and assignment (indeed, such payment of cure costs would reduce the estate's liabilities). The Debtor's disclosures concerning proposed assumed contracts is typical for asset sales of the type under consideration, and sufficient.

*Inadequate Disclosure Regarding Possible Transactions Involving Affiliated Entities*

19. The Court's sale procedures specifically required that bids to acquire the Debtor's assets include: (i) a statement by the bidder that it has not engaged, nor will it engage, in any collusion, within the meaning of Section 363(n) of the Bankruptcy Code, with respect to the bidding or the Proposed Sale; and (ii) identification of any relationship between the bidder and its participants, on the one hand, and the Debtor, the Debtor's affiliates or equityholders, on the other, and any negotiations or agreements with any such persons or entities. [Dkt. No. 64, at p. 16]. The bidders have made these statements in their bids, and have reiterated and confirmed them at the auction. To the extent that the Objections concern sale-related disclosures concerning Mr. Lewis and his affiliated entities, they can be addressed through these bidder statements and any appropriate vetting of such statements by the Court and interested parties. To the extent that the Objections concern prepetition disclosures concerning Mr. Lewis and his affiliated entities, they relate not to the sale but to a desire for a forensic accounting of prepetition business and financial transactions addressed above.

*Require Assurance That Estate's Claims Against Henry R. Lewis Are Left Unimpaired By Sale*

20. The Debtor does not propose to sell any claims the estate may have against Henry R. Lewis or any of his affiliated entities. The "Assets" (as defined in the staking horse bidder asset purchase agreement) do not include any such claims. Each of the Qualified Bidders has disclaimed any intent or right to acquire such claims, and incident to the auction process agreed to that their bidder APAs would be deemed modified to expressly exclude such claims from the assets to be acquired. Nothing in the Sale Motion or the proposed sale order impairs any such claims, or any claims that creditors or third parties may hold.

*The Proposed Sale Constitutes An Improper* Sub Rosa *Plan Or Distributive Scheme*

21. Certain of the Objections contend that the Proposed Sale constitutes an impermissible *sub rosa* plan or other distributive scheme, by adjudicating property rights and distributions to creditors that are properly done only through confirmation of a Chapter 11 plan or otherwise in accordance with the Code's provisions governing distributions to creditors. One such Objection, that of JPMorgan Chase Bank ("JPM") [Dkt. No. 189], raises the issue with respect to the proposed disposition of Customer Trust Funds. As noted above, Customer Trust Funds will not be sold, mooting JPM's objection. Other of the Objections contend that the customer credit provisions of the APA impermissibly favor customer creditors over other creditors (and customers who will utilize such credits over those who will not). But any such use of credits will be on account of a future contractual relationship between two non-Debtor parties. The Bankruptcy Code does not prohibit post-sale transactions among non-debtor parties that have not colluded in the sale process and outcome, and no objecting party asserts that the customers have colluded with either of the bidders. More important, the proffered customer credit is integral to each bidder's business plan projected to generate revenues that *will* provide a return to the estate. If the proffered future travel credit provides a benefit to certain customer creditors not available to all creditors, that benefit is not obtained from the estate, nor at the expense of the estate. A somewhat analogous situation is the benefit that non-debtor parties to contracts receive if their contracts are assumed and assigned in connection with an asset sale; one might view future use of travel credits as a customer's consent to the purchaser's assumption of a modified contract for travel.

22. The United States Trustee in its Objection [Dkt. No. 192] asserts that the Debtor will seek dismissal of its Chapter 11 case once the Proposed Sale is approved and closes, and that

any such dismissal must comply with the distributive scheme of the Bankruptcy Code. The United States Trustee mischaracterizes the Debtor's position. The Debtor acknowledges that dismissal might be one approach to address the Debtor's post-closing situation, as would conversion to Chapter 7 or pursuit of a Chapter 11 liquidating plan. In any event, there is no motion seeking dismissal on file, and the possibility of a future motion is no reason to deny approval of the Sale Motion.

*The Proposed Sale Order Contains Impermissible Findings*

23. Certain of the Objections contest certain of the proposed findings set forth in the proposed sale order, including the Woolf Objection [Dkt. No. 186] and the Hert and Schwartz Objections [Dkt. Nos. 173 and 195]. These objections focus on findings regarding the marketing of the Assets, that the proposed consideration is "fair and reasonable," the necessity of a prompt sale, and the Winning Bidder's good faith. Many of these issues have already been addressed in declarations filed in this Chapter 11 case. For example, the Gordian Declarations provide a detailed explanation of the Debtor's two-year effort to sell the Debtor's business, among other assets. The Gordian Declarations are supplemented by the Goldberg Declaration, describing the Debtor's post-petition marketing and its results. Moreover, Mr. Kaufman will be available for cross-examination and further testimony at the Sale Hearing, during which the Debtor will offer further evidence of its marketing efforts and the benefits of the Proposed Sale. At the Sale Hearing, the Winning Bidder will be available to provide evidence of its good faith—but, at present, the Debtor can assure the Court that no bidder involved in the marketing of the Assets has any prior relationship with the Debtor, its management or ownership, and that it is unaware of any collusion among or improper conduct by the bidders. Accordingly, the Debtor is confident

13

that, at the conclusion of the sale hearing, the Court will be capable of entering its findings consistent with those proposed.

### *The Sale Motion Fails To Comply With MLBR 6004-1(c)(1)(F)*

24. The United States Trustee's Objection [Dkt. No. 192] (and the joinder Objection of each of Airlines Reporting Corporation [Dkt. No. 194] and the Pennsylvania Attorney General [Dkt. No. 196]) contends that the Sale Motion fails to comply with MLBR 6004-1(c)(1)(F), which requires disclosures for a proposed sale of substantially all assets of a debtor to be commensurate with the disclosures required for a liquidating plan involving the sale of such assets. The Debtor submits that the Sale Motion does comply with Local Rule 6004-1(c)(1)(F). The Sale Motion provides the background of the Debtor and its financial difficulties leading to Chapter 11, explains the conduct of the Chapter 11 case, describes the Proposed Sale, the assets to be sold, and the process for obtaining competing bids and Court approval, describes in summary terms the assets left available for administration (principally, avoidance actions and other claims, if any), and the available means for post-sale estate administration (dismissal, conversion, or a liquidating plan). True, the Sale Motion does not describe any provisions for distributions to creditors that would be central to any plan—but that is because the Sale Motion does not envision any distributions of sale proceeds other than payments required to be made at or incident to closing of the sale transaction. Simply put, the Sale Motion is not a plan. The Debtor submits that the Sale Motion is an appropriate (and typical) "mini disclosure statement" required by MLBR 6004-1(c)(1)(F) for a sale of substantially all assets pursuant to Section 363 of the Bankruptcy Code.

**Conclusion**

For the foregoing reasons, the Debtor respectfully submits that the Objections do not state grounds for disapproval of the Proposed Sale, and, subject to appropriate provisions to be contained in the Court's sale order as determined to be necessary or appropriate to address the sale-relevant concerns raised by the Objections, this Court should otherwise overrule the Objections and approve the Proposed Sale.

| | |
|---|---|
| Dated:  August 8, 2023 | VANTAGE TRAVEL SERVICE, INC. |
| | By its attorneys, |
| | */s/ A. Davis Whitesell*  |
| | Michael J. Goldberg (BBO #551869) |
| | A. Davis Whitesell (BBO #551462) |
| | Casner & Edwards, LLP |
| | 303 Congress Street |
| | Boston, MA  02210 |
| | Tel: 617-426-5900 |
| | Email: goldberg@casneredwards.com |
| | whitesell@casneredwards.com |

**Exhibit A**
**Sale Motion Objections—Summary Chart**

| Basis for Objection: / Objecting Party: [Dkt. #] | Annette Woolf [#186] | JPM [#189] | "Surety" [#190] | United States Trustee [#192] | Airlines Reporting Corporation [#194] | Hert & Schwartz [#173 #195] | PA AG [#196] | Ronan [#212] | Carmichaels [#214] |
|---|---|---|---|---|---|---|---|---|---|
| Too Fast/Need Committee | X | | | X | X | X | X | | |
| Continued Fraudulent Scheme/Need Forensic Accounting | X | | | X | X | X | X | | |
| No Cash Refund to Customers | | | | | | | | X | |
| Cannot Sell Customer Trust Funds | X | X | | X | X | X | X | | |
| Cannot Sell/Assign Surety Contracts/Bonds | | | X | | | | | | |
| Cannot Sell Customer PII | X | | | | | | | | X |
| Flawed Sale Process | | | | | | X | | | |
| Fails Business Judgment Test | | | | X | X | | X | | |
| Insufficient Value | | | | X | X | | X | | |
| No Value to Non-Insider Creditors | X | | | X | X | | X | | |
| Inadequate Disclosures re Assumed Contracts | | | | | | X | | | |
| Inadequate Disclosures re Affiliate Transactions | X | | | X | X | | X | | |
| Require Assurance That Estate Claims Against HRL Are Not Impaired | X | | | | | X | | | |
| Improper Distributive Scheme | | X | | X | X | X | X | | |
| Improper Sale Order Findings | X | | | | | X | | | |
| Non-Compliance with MLBR 6004-1 | | | | X | X | | X | | |

## CERTIFICATE OF SERVICE

      I, A. Davis Whitesell, hereby certify that on this 8th day of August, 2023, I caused the foregoing ***Debtor's Omnibus Response to Objections to Debtor's Sale Motion*** to be served by email through the Court's CM/ECF system on all registered users thereof in this case.

Dated:  August 8, 2023

    */s/ A. Davis Whitesell*
A. Davis Whitesell, BBO# 551462
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210
Tel: 617-426-5900
Email: whitesell@casneredwards.com