**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| VANTAGE TRAVEL SERVICE, INC., | Case No. 23-11060 |
| Debtor. | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' RESPONSE AND OBJECTIONS TO (1) DEBTOR'S MOTION FOR ORDER ESTABLISHING NOTICE PROCEDURES AND SCHEDULING TO GOVERN PLAN SOLICITATION, PLAN CONFIRMATION, AND RELATED MATTERS; AND (2) DEBTOR'S MOTION FOR ORDER APPROVING DISCLOSURE STATEMENT, SCHEDULING PLAN CONFIRMATION HEARING, AND ESTABLISHING RELATED DEADLINES AND PLAN SOLICITATION PROCEDURES**

The Official Committee of Unsecured Creditors of Vantage Travel Service, Inc. (the "Committee") files this objection (the "Objection") to (1) the Debtor's Motion for Order Establishing Notice Procedures and Scheduling to Govern Plan Solicitation, Plan Confirmation, and Related Matters [Dkt. No. 347] (the "Plan Procedures Motion"); and (2) the Debtor's Motion for Order Approving Disclosure Statement, Scheduling Plan Confirmation Hearing, and Establishing Related Deadlines and Plan Solicitation Procedures [Dkt. No. 385] (the "Plan Solicitation Motion" and together with the Plan Procedures Motion, the "Motions").

**RESPONSE AND OBJECTION**

1.      The Committee has no fundamental objection to moving expeditiously towards plan confirmation to reduce cost and streamline proceedings. However, the Committee objects to the Plan Solicitation Motion, including any finding or determination that the Disclosure Statement provides adequate disclosure of a plan that is confirmable, and requests that the Committee be permitted to include a statement of its position in any plan solicitation documents for the following reasons.

1

2. Thus far, the Committee has had virtually no participation in preparation of any plan-related documents. The Committee was not provided a copy of any disclosure-related documents (the "Disclosure Statement" [Dkt. No. 383] and the "Plan Supplement" [Dkt. No. 384] and together, the "Disclosure Documents") prior to their being filed after 4 p.m. on Thursday September 21, 2023. While the Committee was provided a draft copy of a liquidating plan [Dkt. No. 382] (the "Plan" and together with the Disclosure Documents, the "Plan Documents") about 48 hours before it was filed on Thursday afternoon, there was no opportunity for input, discussion, or negotiation prior to filing, despite the Committee making itself available.[1]

3. The Committee also has not been afforded adequate information about the Debtor and claims against it, in particular those allegedly held by Mr. Lewis and his trust (the "Owner/Lender Entities"), sufficient to consent to solicitation based on the Disclosure Documents. In order to fulfill the Committee's duties under section 1103 of title 11 of the United States Code (the "Bankruptcy Code"), the Committee served document and information requests on the Debtor on September 7, 2023. The Committee's consent to the terms for use of cash collateral embodied in the pending cash collateral order [Dkt. No. 379] (the "Cash Collateral Order") was premised on the understanding that there would be prompt and fulsome disclosure of facts and information related not only to the Perfection Challenge (as defined in the Cash Collateral Order) but sufficient for the Committee to fulfill its statutory duties. This has not occurred.

4. On September 18, 2023, the Committee received electronic access to a handful of documents—including a copy of the pending (fourth amended) note between the Debtor and Mr.

---

[1] In addition, an intervening Jewish religious holiday has made counsel for the Committee and the Committee's chairman (and perhaps others) unavailable for one of the two business days between the time the Plan Documents were filed and the hearing to authorize disclosure and solicitation. Thus, the Committee has had a single business day to consider the Plan and Disclosure Documents prior to Tuesday's hearing. This is wholly inadequate.

23152909.v1

Lewis and the trust (the "Owner/Lender Entities"), a security agreement, an assignment agreement, a UCC search, and a memo. Nothing else has been produced or provided. Among other things, the Committee does not have adequate information to determine whether the Owner/Lender Entities have provided value to the Debtor—*i.e.* there are no documents demonstrating the flow of funds. At the same time, the promissory note provided purports to make the Debtor liable (on account of a secured obligation) to the Owner/Lender Entities for amounts advanced by affiliates of the Owner/Lender Entities (parties who do not, as of this moment, appear to be secured parties of the Debtor). The Committee is not aware that this information was disclosed prior to approval of the Debtor's waiver of claims against affiliates related to the Prepetition Debt (as defined in the Cash Collateral Order), per the cash collateral stipulation [Dkt. No. 376] (the "Stipulation").[2]

5.  Moreover, based on what little information has been provided, the Disclosure Documents do not provide adequate disclosure and the Plan appears likely not to be confirmable in its present state due to its overreach regarding the Owner/Lender Entities. For example, the proposed treatment of the Owner/Lender Entities' alleged secured claim (the Class One claim under the Plan) authorizes assignment to the Owner/Lender Entities certain property that is only subject to an adequate protection lien without a mechanism to limit transfer of such property to the extent of any diminution in value of prepetition collateral. More specifically, confirmation would assign "insurance relevant to the Cyberattack and any business interruption claims arising out of the Cyberattack" to the Owner/Lender Entities.[3] The Committee understands that the Owner/Lender Entities have taken no steps to perfect an interest in such property other than filing

---

[2] The Committee understands the Court's comments at the September 15, 2023, hearing on entry of the Cash Collateral Order to have been clear – the Debtor may have waived the right to bring claims against third-parties, but the Court has not granted releases.

[3] The Committee has not completed its Perfection Challenge and reserves all rights.

3

23152909.v1

a financing statement, yet the First Circuit has already ruled that this is insufficient. *Wheeling & Lake Erie Railway Co. v. Robert J. Keach, Chapter 11 Trustee (In re Montreal, Maine & Atlantic Railway, Ltd.)*, 799 F.3d 1 (1st Cir. 2015). To be confirmable, the Plan must have a mechanism to ensure that the Owner/Lender Entities do not receive assets that exceed the value of any prepetition secured claim (if one exists), including the value of any adequate protection claim. As of right now, the Plan does not appear to do this.

6. While the Committee's analysis of the Plan Documents is not yet complete, the Cyberattack claim proceeds is just one issue. The Plan apparently treats funds of customers received after May 12, 2023 (the "Customer Funds") as property of the estate—a 180-degree turn from the position taken by the Debtor and Owner/Lender Entities earlier in this case. The Disclosure Documents suggest that the Debtor is taking this position to be consistent with the arguments of, among others, the Committee. While the Debtor has yet to produce a single document evidencing that the Customer Funds are impressed with a trust, the Committee has not taken a position on this issue and is still awaiting responses to its document request in order to evaluate the Debtor's prior position. In the meantime, if the Debtor has changed its position on the issue, then it should say so clearly and unequivocally—with an explanation.[4]

7. As a result, the Committee requests that the Court either (A) deny the Plan Solicitation Motion (without prejudice) or (B) mandate that a statement drafted by the Committee be included in any solicitation documents. Such statement would indicate, among other things, that the Committee (A) did not participate in the drafting of the Plan Documents; (B) does not support confirmation of the Plan, as currently proposed; (C) believes that the Plan is

---

[4] There are also likely to be confirmation objections to the Plan as currently drafted. The Committee is likely to object to distributions to the Owner/Lender Entities prior to completion of an investigation of any claims against them. In addition, the Plan would transfer Employee Retention Credits (as defined in the Plan) to the Owner/Lender Entities without considering whether the Internal Revenue Service has setoff rights that are senior such that the Employee Retention Credits could reduce tax liability of the estate to the benefit of general unsecured creditors.

unconfirmable in its current state; and (D) will continue to work with the parties toward the goal of consensual confirmation, to the extent possible, and endeavor to communicate its position to general unsecured creditors. The Committee further requests that any order authorizing solicitation expressly reserve all objection rights to approval of the Disclosure Documents on a final basis.

## COMPLIANCE WITH LOCAL RULE 9013-1(i)

8. To the extent Rule 9013-1(i) of this Court's local rules applies to the Motions, the Committee respectfully requests that the Court waive compliance under the circumstances, including the unusually short time between filing of the Plan Solicitation Motion and a hearing on such motion.

## RESERVATION OF RIGHTS

9. The Committee's review and analysis of the Plan Documents is continuing and is not yet complete. The Committee reserves all of its rights, including the right to object to approval of the Disclosure Statement on a final basis at a subsequent hearing.

## CONCLUSION

Based on the foregoing, the Committee requests that the Court (A) deny the Motions without prejudice or (B) mandate that the Debtor include in all Disclosure Documents a statement by the Committee regarding its position on the Plan Documents. The Committee further requests that the Court grant such further and additional relief as the Court deems proper.

| | |
|---|---|
| Dated: September 25, 2023 | */s/ Andrew C. Helman* <br> Andrew C. Helman (BBO# 679155) <br> DENTONS BINGHAM GREENEBAUM LLP <br> One Beacon Street, Suite 25300 <br> Boston, Massachusetts  02108 <br> (207) 619-0919 <br> andrew.helman@dentons.com <br><br> -and- <br><br> Gina M. Young (*pro hac vice* pending) <br> Jacob S. Margolies (*pro hac vice* pending) <br> Dentons Bingham Greenebaum LLP <br> 3500 PNC Tower <br> 101 South Fifth Street <br> Louisville, KY 40202 <br> Phone:  (502) 587-3545 <br> gina.young@dentons.com <br> jacob.margolies@dentons.com <br><br> *Proposed Counsel for the Official Committee of Unsecured Creditors* |

23152909.v1

## CERTIFICATE OF SERVICE

I, Andrew C. Helman, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document (with exhibits, if any) to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service, which served the same on the parties receiving notice via the CM/ECF system.

Date: September 25, 2023        */s/ Andrew C. Helman*
Andrew C. Helman (BBO# 679155)
DENTONS BINGHAM GREENEBAUM LLP
One Beacon Street, Suite 25300
Boston, Massachusetts  02108
(207) 619-0919
andrew.helman@dentons.com