UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |
|---|---|
| In re:<br><br>VANTAGE TRAVEL SERVICE, INC.<br><br>                                    Debtor. | )<br>)<br>)   Chapter 11<br>)<br>)   Case No. 23-11060-JEB<br>)<br>) |

### DEBTOR'S RESPONSE TO THE OBJECTION OF
### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
### TO DISCLOSURE STATEMENT AND LIQUIDATING PLAN

Vantage Travel Service, Inc. (the "Debtor") submits the following response to *The Objection of the Official Committee of Unsecured Creditors to (A) the Plan Summary and Disclosure Statement Regarding Debtor's Liquidating Plan Dated October 3, 2023, and (B) the Debtor's Liquidating Plan Dated October 3, 2023* [Dkt. No. 530] (the "Objection"). The Objection misrepresents—indeed, distorts—the negotiations among the Debtor, the Committee and the Debtor's secured creditors Henry R. Lewis and the Henry R. Lewis Trust u/d/t dated November 24, 2004 (collectively, the "Prepetition Lender") over the *Debtor's Liquidating Plan Dated October 3, 2023* (the "Plan"). The Debtor (through its undersigned counsel) was deeply involved in those negotiations, and disputes that there was any secret agreement between counsel for the Prepetition Lender and the proposed Creditor Trustee Stephen Gray—a bankruptcy professional of the highest integrity and reputation. As will be explained below, the discussions concerning the Creditor Trustee's choice of counsel were fully disclosed, and were in response to the growing contentiousness between the Committee and the Prepetition Lender that was threatening to derail the Plan confirmation process. When all the facts underlying the Committee's allegations are fully understood, there can be no question that (i) the Plan complies

with Bankruptcy Code Section 1129, (ii) the Plan was proposed in good faith, and (iii) the Plan—which has been accepted by the Debtor's creditors—should be confirmed.

Responding further, the Debtor states as follows:

### Factual Background

1. As the Court is certainly aware, the Debtor's Chapter 11 case has been highly combative. In the Debtor's view, this is likely the result of the significant publicity given to the Debtor's financial issues in the local press, as well as the understandable anger of its customers with the Debtor's inability to provide the travel promised to these customers.

2. Rather than become embroiled in controversy and expensive litigation over these claims, the Debtor, as well as the Prepetition Lender, have focused on the meaningful benefits they might provide to the Debtor's customers in connection with the Chapter 11 case. Thus, the Debtor concentrated its efforts on an accelerated sale of its assets (the "Asset Sale"), eventually closing that sale with Pacific Travel Partners, Inc. ("Pacific"). In fact, the Debtor's negotiations with potential purchasers prioritized the potential treatment of customers, resulting in an agreement providing travel credits equal to 100% of its customers' claims. As previously observed by this Court, the improvements obtained in the terms of the Asset Sale came largely at the expense of the Prepetition Lender—who has also funded the Chapter 11 plan process at significant cost.

3. Upon the closing of the Asset Sale, the Debtor turned its efforts to the formulation, negotiation and approval of a liquidating plan to bring the Chapter 11 case to a conclusion. With the consent of the Prepetition Lender, the Debtor, through its counsel, reached out to Stephen Gray to assess his interest in serving as Creditor Trustee, and received a positive response.

4.     The Debtor also reached out to the Committee's counsel to discuss the choice of Creditor Trustee.  Counsel's immediate reaction was that he not heard of Mr. Gray, but would give him due consideration.  In response, the Debtor, through counsel, arranged for a meeting between Mr. Gray and the Committee counsel, and received word from the Committee's counsel that the meeting was productive.[1]  There are two important takeaways to be derived from this process: (i) it was the Debtor, not the Prepetition Lender, that proposed Mr. Gray's appointment as Creditor Trustee, and (ii) the Prepetition Lender had no undue influence in the selection process.

5.     The formulation of the liquidating plan presented a challenge: because the United States Trustee had delayed the appointment of the Creditors Committee, the Committee hadn't yet had an opportunity to investigate the validity of the liens securing the claim of the Prepetition Lenders, or to look into claims being made in the press and elsewhere that the Debtor's owner had diverted for his own benefit funds that were paid to the Debtor by its customers.[2]  After discussions among the Debtor, the Prepetition Lender and the Committee, the parties concluded that they would attempt to facilitate an accelerated investigation by the Committee into all of these claims, with the hope of concluding that process, and achieving confirmation of a consensual plan, within 30 to 60 days.

---

[1] This was the first of several meetings between Andrew Helman, the Committee's counsel, one or more of the Committee members, Mr. Gray and James Wallack, Mr. Gray's long-time counsel.  The Debtor notes that Mr. Gray and his counsel have been exceedingly generous with their time for the Committee's benefit, participating in a number of in-person and telephonic meetings to discuss issues affecting the Debtor, the Plan and the Creditor Trust.  The latest of those meetings occurred on or about November 1st, during which the Debtor believes that Mr. Gray continued to provide information and suggestions to the Committee about administering the Creditor Trust.

[2] The Debtor has yet to identify any diversion of funds to Mr. Lewis or any entities that he controls, noting as in the past that the Prepetition Lender provided more than $35 million in funding to support the Debtor's operations in the past.  Nevertheless, the Debtor recognizes the need for an independent investigation of these claims by an impartial and qualified fiduciary.

6.     Both the Debtor and the Prepetition Lender believed that, if the hoped-for timeline was to be achieved, the Committee's investigations would best be commenced with a series of interviews with key Debtor personnel and consultants, followed by a targeted document review, and encouraged the Committee's counsel to take that path.  Instead, the Committee delivered the Document Request referred to in the Objection—a 40-item document request that the Debtor quickly concluded would not facilitate the completion of an investigation in the time period discussed by the parties.[3]  Thus, the Debtor proposed to both the Prepetition Lender and the Committee a "pivot": that all claims other than those related to the validity and perfection of the Prepetition Lender's lien be preserved for further investigation by the Creditor Trustee.  This pivot would, among other things, require that the Prepetition Lender forego a release of those claims in a plan—a concession to which the Prepetition Lender immediately agreed.  Once the Committee expressed its assent to this approach, the Debtor believed that the path to a consensual plan had been secured, and its counsel proceeded to prepare the Plan and a related Plan Summary and Disclosure Statement (the "Disclosure Statement") that included, *inter alia*, funding for the Creditor Trustee's investigative work.

7.     Unfortunately, the disputes that have plagued this case continued.  The Committee, apparently unhappy with the cash collateral agreement its counsel had negotiated with the Prepetition Lender the week before, and without prior warning to the Debtor, filed a motion to convert the case to Chapter 7 or to appoint a Chapter 11 trustee (the "Conversion Motion") just three days before the hearing on the Disclosure Statement.  The damage wrought by this decision was substantial: it shattered ongoing Plan discussions, and effectively ended communications between the Committee and the Prepetition Lender over the Plan's provisions.

---

[3] Many items in the Committee's request sought five years' worth of financial and other records, and would have required extensive searches through voluminous email records.

In the Debtor's view, the Conversion Motion ended any realistic hope of the Debtor that there could be a consensual plan achieved in the case.

8. The filing of the Conversion Motion also led directly to the decision by the Prepetition Lender's counsel to contact Mr. Gray, and to share with him that the relationship with Committee counsel had become strained beyond repair. In a call among the Debtor's counsel, the Prepetition Lender's counsel and Mr. Gray taking place on October 3, 2023, those sentiments were expressed, and Mr. Gray was asked if he would be willing to serve as Creditor Trustee with a different choice of counsel. During the call, it was made clear to Mr. Gray that, without his agreement to this request, the Prepetition Lender would not be willing to provide the $250,000 in Creditor Trust funding then provided for in the Plan. However, neither counsel to the Debtor or the Prepetition Lender attempted to dictate choice of counsel: instead, in light of the breakdown in the relationship among the parties, Mr. Gray was asked to select another lawyer of his own choosing. The parties agreed that this demand would be shared with Committee counsel, and Mr. Gray confirmed that he would be willing to select different counsel if the Committee did not object.

9. On the same day of that call—indeed, within hours of the call—Debtor's counsel informed Mr. Helman that it had occurred, and disclosed the condition to Creditor Trust funding involving the choice of Creditor Trustee counsel.

10. Thus, the following should be clear from this narrative:

(a) There was no "secret condition" that was not disclosed to the Committee and its counsel—the meeting, and the contents of the discussions among the Debtor's counsel, the Prepetition Lender's counsel, and the Creditor Trustee—were immediately disclosed;

5

(b) The Creditor Trustee continues to be free to conduct a full investigation of all claims against the Prepetition Lender with counsel of his choosing; and

(c) The Prepetition Lender's conditioning of Creditor Trust funding was the result of, and an attempt to defuse, the continued disputes among the parties in the case.

**Argument**

11. This narrative also makes clear that the relief that the Committee is not entitled to the relief it seeks in its Objection. As a threshold matter, there is no basis for the disqualification of Mr. Gray as Creditor Trustee. Mr. Gray has done nothing wrong in his interactions with the Debtor, the Committee or the Prepetition Lender. The Committee may feel a loss of confidence in Mr. Gray, but there is no rational basis for that claim. As this Court is well aware, Mr. Gray's reputation is the product of some 50 years in the restructuring profession, and he has regularly served as a trustee in numerous Chapter 11 and Chapter 7 cases in this District. That he had a discussion with the Debtor's counsel and the Prepetition Lender's counsel about his choice of counsel in no way diminishes that reputation, nor impairs his ability to perform his duties as Creditor Trustee.

12. Further, the actual facts and circumstances of this case do not support the Committee's contention that the Plan fails to comply with Bankruptcy Code Section 1129(a)(1). Through its proposed retention of Mr. Gray, who is eminently capable of serving as Creditor Trustee and is free from any conflicts of interest, the Plan provides adequate means for its implementation. And, even if the Plan funding is not made available, as noted by the Court, this would hardly be the first case where a Creditor Trustee was required to perform his work with limited funding.

13. Nor is there any basis for the contention that the Plan was not proposed in good faith. The Plan does not seek to hide potential claims against the Prepetition Lender, nor to interfere with their prosecution if appropriate. Indeed, the decision to defer an investigation into the claims—one of the foundational provisions of the Plan—was intended to enhance that investigation, by providing additional time for it to take place (rather than under the pressure of a plan confirmation deadline). The Debtor, by proposing and obtaining the parties' consent to the "pivot" described above, was exhibiting nothing but good faith in its management of the plan process.

14. Additionally, the Debtor disputes the Committee's assertion that the Disclosure Statement is defective, due to its failure to disclose the discussions regarding the Creditor Trustee's counsel. As an initial matter, the time to raise this issue was in connection with the Court's preliminary approval of the Disclosure Statement—at which time the Committee was fully aware of the Creditor Trustee counsel issue. In reliance on the Committee's failure to object to the Disclosure Statement, the Debtor has undertaken extensive efforts to disseminate that document—and to respond to the countless requests of customers and other creditors for further information, for guidance in filing and completing proofs of claim and ballots, and in making other preparations for implementing the Plan. The time to raise the disclosure concern—about a "secret condition" that was, in fact, not a secret—was at the hearing respecting the Disclosure Statement, and not now.

15. But the Debtor disputes that the choice of counsel issue raises disclosure concerns at all. Frankly, it would be surprising if any of the Debtor's customers cared about the Creditor Trustee's choice of counsel, and thus the omission of a discussion on this topic does not cause the Disclosure Statement to lack "adequate information" under Bankruptcy Code Section 1125.

Nor is there any reason to think Mr. Gray's participation in one telephone discussion involving his choice of counsel would cause a reasonable creditor to consider the issue relevant to the Creditor Trustee's qualifications.  In short, there is no reason to conclude that the Creditor Trustee's selection of counsel needed to be addressed in a Disclosure Statement disseminated to thousands of individuals with no experience in bankruptcy cases or their administration.

16.     In conclusion, the Debtor believes that it is time to put these continuing disputes between the Prepetition Lender and the Committee in the rear-view mirror.  The Plan has been disseminated to the Debtor's creditors.  The unsecured creditors in Class Six have voted overwhelmingly to accept the Plan.  So have the Prepetition Lender (Class One) and JPMorgan Chase Bank (Class Four).  The only alternative to confirmation is the conversion of the case to Chapter 7—a result which will sacrifice the Prepetition Lender's funding of the Creditor Trust, and which will otherwise achieve no meaningful result other than the appointment of a trustee with no better qualifications than Mr. Gray.  As set forth in the *Debtor's Memorandum of Law in Support of Confirmation of Liquidating Plan* filed herewith, the Plan meets the requirements for confirmation, and this Court should confirm the Plan that has been accepted by creditors so that the Creditor Trustee may proceed with his administration of the Creditor Trust for their benefit.  The Debtor urges the Court to look beyond the latest round of disputes of the parties, and to enter its order confirming the Plan bringing this phase of the Chapter 11 case to an orderly conclusion.

Dated:  November 8, 2023             VANTAGE TRAVEL SERVICE, INC.
                                     By its attorneys,

                                     */s/ Michael J. Goldberg*
                                     Michael J. Goldberg (BBO #551869)
                                     A. Davis Whitesell (BBO #551462)
                                     Casner & Edwards, LLP
                                     303 Congress Street

8

Boston, MA  02210
Tel: 617-426-5900
Email: goldberg@casneredwards.com
whitesell@casneredwards.com

## **CERTIFICATE OF SERVICE**

      I, Michael J. Goldberg, hereby certify that, to the best of my knowledge, the ***Debtor's Response To The Objection Of The Official Committee Of Unsecured Creditors To Disclosure Statement And Liquidating Plan*** will, contemporaneously with its entry on the Court's docket through the Court's CM/ECF system, be transmitted by email through such system to all registered users of such system in this Chapter 11 case, including the individuals whose names, party affiliations, and email addresses are set forth on the attached CM/ECF Service List.

Dated:  November 8, 2023                   */s/ Michael J. Goldberg*
                                                                 Michael J. Goldberg, BBO# 551869
                                                                 Casner & Edwards, LLP
                                                                 303 Congress Street
                                                                 Boston, MA 02210
                                                                 Tel: 617-426-5900
                                                                 Email: whitesell@casneredwards.com

**CM/ECF Service List**

| Name | Party Represented | E-Mail Address |
|---|---|---|
| Eric K. Bradford | U.S. Trustee | Eric.K.Bradford@USDOJ.gov |
| Allison L. Carr | Creditor Commonwealth of Pennsylvania, Office of the Attorney General | acarr@attorneygeneral.gov |
| David A Casale | Creditor JPMorgan Chase Bank, N.A. | dcasale@reedsmith.com; lsizemore@reedsmith.com; jroach@reedsmith.com; slucas@reedsmith.com |
| Robert F Casey | Creditor Brad L Harris<br>Creditor John McCatherin<br>Creditor William P Graves III | bobcasey@robertfcasey.com; bankrupt@robertfcasey.com |
| Daniel C. Cohn | Interested Party Pacific Travel Partners, Inc. | dcohn@murthalaw.com, lmulvehill@murthalaw.com |
| Joseph M DiOrio | Interested Party Brookline Bancorp | jmdiorio@dioriolaw.com, jdiorio@pldolaw.com; aperry@pldolaw.com; mrollinson@pldolaw.com |
| Ronald W. Dunbar, Jr. | Creditor Annette Woolf | dunbar@dunbarlawpc.com |
| Peter J. Haley | Creditor Annette Woolf | peter.haley@nelsonmullins.com, marie.moss@nelsonmullins.com |
| Andrew C. Helman | Creditor Committee Official Committee of Prepetition Lenders | andrew.helman@dentons.com, samantha.hayes@dentons.com, tiffany.babcock@dentons.com |
| Jonathan Horne | Interested Party Pacific Travel Partners, Inc. | jhorne@murthalaw.com, lmulvehill@murthalaw.com |
| Robert J. Keach | Creditor Henry R. Lewis Trust u/t/d November 24, 2004<br><br>Creditor Henry R Lewis | rkeach@bernsteinshur.com, acummings@bernsteinshur.com; astewart@bernsteinshur.com; kquirk@bernsteinshur.com; aprescott@bernsteinshur.com |
| Richard King | United States Trustee | ustpregion01.bo.ecf@usdoj.gov |
| John G. Loughnane | Consumer Privacy Ombudsman | LoughnaneJ@whiteandwilliams.com |
| John J. Monaghan | Interested Party Nordic Hamburg GmbH | bos-bankruptcy@hklaw.com, hapi@hklaw.com |
| Kate E. Nicholson | Susan Wallace-Morgan<br>Tom Morgan | knicholson@nicholsonpc.com; knicholson@ecf.courtdrive.com; admin@nicholsonpc.com; cloredo@nicholsonpc.com; apeck@nicholsonpc.com |
| Sarah E Petrie | Creditor Commonwealth of Pennsylvania, Office of the Attorney General | sarah.petrie@mass.gov |

| Name | Party Represented | E-Mail Address |
|---|---|---|
| Adam Prescott | Creditor Henry R. Lewis Trust u/t/d November 24, 2004<br><br>Creditor Henry R Lewis | aprescott@bernsteinshur.com; astewart@bernsteinshur.com; kquirk@bernsteinshur.com; sbaker@bernsteinshur.com; 12978@notices.nextchapterbk.com; cmastrogiorgio@bernsteinshur.com |
| David P. Primack | Creditor U.S. Specialty Insurance Company and its affiliated sureties | dprimack@mdmc-law.com, gbressler@mdmc-law.com; scarney@mdmc-law.com |
| Cara Sgobba | Creditor Trip Mate, Inc. | csgobba@grsm.com |
| Heather Sprague | U.S. Trustee | Heather.Sprague@usdoj.gov |
| Jeffrey D. Sternklar | Creditor Smith Duggan Cornell & Gollub LLP | jeffrey@sternklarlaw.com, jdsternklar@yahoo.com; r60083@notify.bestcase.com; 3338331420@filings.docketbird.com |
| Melissa L Van Eck | Creditor Commonwealth of Pennsylvania, Office of the Attorney General | mvaneck@attorneygeneral.gov |
| Harvey J Wolkoff | Creditor Airlines Reporting Corporation | camillechirillo@quinnemanuel.com, erikamorabito@quinnemanuel.com; brittanynelson@quinnemanuel.com |
| Lynne B. Xerras | Interested Party Nordic Hamburg GmbH | lynne.xerras@hklaw.com |
| Gina M. Young | Creditor Committee Official Committee of Prepetition Lenders | gina.young@dentons.com |